## N. K. FAIRBANK CO. v. LUCKEL, KING & CAKE SOAP CO.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

No. 504.

1. TRADE-NAMES—INFRINGEMENT—INTENT.

It is not essential to the right of a complainant to an injunction against the infringement of a trade-name that absolute fraud or willful intent to infringe be shown, but it will be presumed that the defendant intended the natural consequences of its acts; and if it puts its goods on the market under a name so nearly like complainant's as to enable dealers to palm them off on customers as complainant's, and at a price which makes it an object to do so, it may be held responsible for the consequent injury to complainant's business.

2. SAME—USE OF DIFFERENT LABELS OR PACKAGES.

It is not a defense to a suit to enjoin infringement of a trade-name by the adoption of a name so similar as to deceive purchasers, who are acquainted with complainant's article only by name and through complainant's advertisements, that defendant uses distinctive labels or forms of package.

3. SAME.

A trade-name differs from a trade-mark in that it appeals to the ear more than to the eye, and hence the character of the label or package used by an imitator is of no great force in determining the question of infringement.

4. SAME—SIMILARITY OF NAMES—"GOLD DUST" AND "GOLD DROP."

The name "Gold Drop," used by defendant to designate a washing powder, is sufficiently similar in sound to the name "Gold Dust," previously adopted by complainant for a similar article, and by which name its product had been for several years extensively advertised, to deceive ordinary purchasers not familiar with the style of label or package used by complainant, and its use constitutes an infringement, although defendant uses a different style of label and package, especially where defendant sells its product, which retails at the same price, at a lower price

to dealers, and thus makes it an object for them to palm it off on purchasers asking for complainant's whenever possible, which it is shown they in fact have done.

Appeal from the Circuit Court of the United States for the District of Oregon.

Fenton, Bronaugh & Muir (Rowland Cox, of counsel), for appellant. Cake & Cake, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity. It was instituted to restrain the infringement of the trade-mark or trade-name "Gold Dust," used to designate a washing powder manufactured and sold on the market by appellant. The alleged infringement consists of the use of the name "Gold Drop" to designate a washing powder manufactured and sold by appellee. The circuit court held that appellant was not entitled to the relief prayed for, dismissed its bill, and rendered a decree in favor of respondent (88 Fed. 694), from which the present appeal is taken.

The bill, after alleging complainant's use, appropriation, and right to the trade-mark or trade-name of "Gold Dust" to identify its washing or soap powder since the year 1887, avers that respondent, since the 1st day of July, 1897, with full knowledge of complainant's rights in the premises, "wholly without your orator's consent, intending to injure and defraud your orator, and to divert to itself the business and profits connected with the sale of 'Gold Dust' washing powder which of right belong to your orator, has knowingly and fraudulently made use, in connection with the manufacture and sale of a washing or soap powder by said defendant manufactured, of the words or designation 'Gold Drop,' and has caused washing or soap powder by it, the said defendant, manufactured, to be offered and sold as 'Gold Dust' washing powder, and as and for the washing powder of your orator's manufacture, and continues so to do, notwithstanding your orator's protest in the premises, in violation of your orator's rights aforesaid, and contrary to equity, to your orator's great loss and injury actually sustained"; that the acts of the respondent are unlawful, and "tend to cause the washing or soap powder of the defendant, put up as aforesaid, to be mistaken for your orator's 'Gold Dust' washing powder, and to be substituted therefor by unscrupulous persons, and because, all and singular, they enable and promote an unfair competition, and a false and fraudulent sale of the defendant's washing powder, as and for your orator's 'Gold Dust' washing powder, to your orator's great loss and injury," and "constitutes a fraudulent, inequitable, and unfair competition in business, and a trespass upon, and violation of, the good will of your orator's business, connected with the manufacture and sale of its 'Gold Dust' washing powder, against which your orator is equitably entitled to be protected, and which fraudulent, inequitable, and unfair competition and trespass upon your orator's good will it prays may be prevented and restrained according to the course of equity," etc. The answer denies having committed any

wrongful, illegal, or fraudulent acts, or any acts, in violation of complainant's rights in the premises, and for a separate answer alleges:

"That on or about July, 1894, defendant began to manufacture a certain washing compound or soap powder, and that on or about said time defendant offered said soap powder for sale in the market, and has continued so to do, without interruption, ever since; that defendant placed upon said package of washing compound aforesaid the name or designation 'Gold Drop,' and wrapped the said package in paper of an entirely different color and character from that of the plaintiff, the general effect of which said wrapper was such that the packages of plaintiff and defendant might easily be distinguished, and in truth the defendant avers that there are no common features whatever between the packages of plaintiff and defendant, but that said packages cannot be mistaken one for another; * * * that said soap powder, the package in which the same was sold, the wrapper thereon, designation 'Gold Drop,' figures, color, and general effect of said package was produced, and said powder sold with said wrapper as aforesaid, without any intention to enter into unfair competition with the plaintiff, or to violate any of the rights of the plaintiff whatever; and the defendant avers that the said name 'Gold Drop' on said package, the color, the lettering, and the general effect of said package, does not in any manner whatever violate any of the rights of the plaintiff, or infringe upon the word or name or designation 'Gold Dust,' nor the package in which said plaintiff puts up its said washing compound or soap powder under the name 'Gold Dust.'"

There is no substantial conflict in the evidence produced at the trial. The questions as to priority of use, and expenditure and popularization of the washing powder under the name of "Gold Dust," by appellant, are undisputed.

Jasper G. Gilkinson, the secretary of the N. K. Fairbank Company, testified that:

"Ever since the introduction of 'Gold Dust,' in the year 1887, the N. K. Fairbank Company has used every possible means to familiarize the public with the words 'Gold Dust,' and to increase its sale. They have advertised extensively in newspapers, have issued hangers, cut-outs, etc., and in every way they have endeavored to draw the attention of the public to the name of the goods. They have expended during the period after its first adoption, in 1887, more than a million of dollars in advertising, and hundreds of thousands of dollars for traveling salesmen."

The testimony shows that respondent at the time it commenced the manufacture of its washing powder "Gold Drop" was well aware of the existence of complainant's "Gold Dust," and that it had been extensively and expensively advertised in Oregon as well as in other states; that in 1897 respondent sent a letter to Rowland Cox, counsel for complainant, which reads as follows:

"Portland, Oregon, Sept. 23, 1897.

"Mr. Rowland Cox., New York, N. Y.—Dear Sir: Replying to your letter of the seventeenth inst., we inclose the face of our label, which we think is sufficient answer, being at once seen to be the most strikingly distinctive washing powder label in the market. We might add that the name commended itself to us from the fact that it is familiar to the people of this great prune-growing region as the name of a popular prune or plum known as the 'Gold Drop Prune,' as will be seen by referring to any Northwest nursery catalogue.

"Very truly yours,                    Luckel, King & Cake Soap Co.,
                                       "Chas. W. Cottel, Secretary."

Mr. Luckel, the president of the respondent, in reply to the question, "How did you come to choose the name 'Gold Drop'?" answered as follows:

"Our secretary, Mr. Cottel, had a whole lot of names; that is, we were going to get up a washing powder, and he wrote out from twenty-five to thirty, I should judge, on a small piece of paper,—different names,—and this was one of them; and he preferred a different name, and Mr. King and I thought that this would be the best, on account of it being short,—good for advertising, and easy to remember."

It also appears from the testimony that the packages of the respondent's "Gold Drop" were sold to retail dealers at a less price than the complainant's "Gold Dust," and that both were sold to purchasers at the same price; that at four different stores in Portland two witnesses at different times asked for "Gold Dust" and were given "Gold Drop" without any explanation; and that the bills were in three instances marked as "G. Dust." There was testimony on behalf of respondent to the effect that its "Gold Drop" was sold by it without any fraudulent or other intention to palm off or sell the same upon the reputation acquired for the soap under the name of "Gold Dust," and that respondent took especial pains to avoid any imitation of complainant's labels.

Upon these general facts, without entering into details, we pass to the legal questions involved herein. It is assigned as error that "the court erred in adjudging and decreeing that the name 'Gold Drop' used by the defendant does not infringe upon the trade-mark and trade-name 'Gold Dust' of this complainant, and does not deceive the trade and consumers to the detriment of complainant," and that the court erred in refusing to enter a decree in favor of complainant enjoining respondent from the commission of certain acts as prayed for in the bill of complaint. In many of the decided cases it has been held that the respondent ought not to be held liable for the imposition or fraud of the merchants or shopkeepers or their assistants in palming off upon the innocent public his goods as those of another. As an abstract proposition, this may be conceded to be correct; but it falls far short of being the only view of the case. The controlling question is whether or not the respondent has "knowingly put into the hands of the retail dealer the means of deceiving the ultimate purchasers." N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869, 878, and authorities there cited; New England Awl & Needle Co. v. Marlboro Awl & Needle Co. (Mass.) 46 N. E. 386; Von Mumm v. Frash (C. C.) 56 Fed. 830, 838. The fact that "Gold Drop" was sold to retail dealers for a less price furnished an incentive and inducement to retail dealers to dispose of "Gold Drop" instead of "Gold Dust," as they thereby gained a greater profit for themselves.

The law is well settled that in suits of this character the intention of the respondent in adopting the style of package, or choosing a name for a similar product, is to a certain extent immaterial. It is not essential to the right of complainant to an injunction to show absolute fraud or willful intent on the part of the respondent. Upon familiar principles, it will be presumed that the respondent contemplated the natural consequences of its own acts. If the acts of respondent in the adoption of the name of "Gold Drop" constituted an infringement of the trade-mark or trade-name of the complainant, and it was put on the market in such a manner as to interfere with the legal rights of complainant, to its loss and injury, it would be entitled

to an injunction, irrespective of the question of any testimony as to actual fraud or willful intent. The court must determine the intent from respondent's acts and the results produced thereby. R. Heinisch & Sons v. Boker (C. C.) 86 Fed. 766, 769.

It is claimed that the respondent's packages are to the eye unlike complainant's. Admit it. There are many cases where respondent's packages and labels are to the eye so distinctive and unlike the packages of complainant as not to deceive purchasers exercising ordinary care, who are accustomed to the size of the packages and the general characteristics of the labels. But how about the stranger who knows nothing about the packages or of the labels, but has read the advertisement, and remembers the name "Gold Dust"? Is it not fair to assume in a case like this that a decided majority of the purchasers would not ask for a specific size of a package with a certain designated label? Would they not call for the article by name? It must constantly be borne in mind that there are two kinds of trade-marks,—one of peculiar pictures, labels, or symbols; the other in the use of a name. The infringement charged herein is in the adoption by the respondent of both the trade-name and trade-mark. So far as the name "Gold Dust" is concerned, the dissimilarity of the labels, size of packages, and character of symbols can make no essential difference. As was said in Hier v. Abrahams, 82 N. Y. 519, 525:

"The trade-mark consisted in the word simply, and the plaintiffs might have printed it on any form of label they might fancy, without losing the protection of the law. The defendants had no right to adopt it by merely putting it on a label of different fashion from that which the plaintiffs had been in the habit of using."

See, also, Battle v. Finlay (C. C.) 45 Fed. 796; N. K. Fairbank Co. v. Central Lard Co. (C. C.) 64 Fed. 133, 136.

The trade-name differs from the trade-mark in this: that one appeals to the ear more than to the eye. The advertisements of the name were for the purpose of having the intended purchaser ask for "Gold Dust" without his having any knowledge of the character of the label on the package he was to receive, and in this sense the fact that the infringer of the name used different devices and symbols would have no great force. The imitation of the name "Gold Dust," by which the soap or washing powder of complainant was known, would constitute an infringement, because purchasers would be liable to be misled who had no knowledge of the article except the advertised name as being the best soap or washing powder in the market. It is not unusual for a certain specific article advertised extensively, of reputed excellence, to become publicly known and called for by the name which is more readily retained in the memory. This is one of the reasons why respondent selected the name "Gold Drop,"—"on account of its being short; good for advertising, and easy to remember."

Many precautions were taken by respondent to avoid imitating complainant's label. Is it not peculiarly significant that no efforts whatever were made in this direction with reference to the selection of a name totally dissimilar from that of "Gold Dust"? Why was "Gold Drop" selected? There were plenty of other names that were short and easy to remember. Other manufacturers of washing soap had

found no difficulty in this regard; for instance: "Pearline"; "Babbit, 1776," etc. When these facts are considered, is it not reasonably clear that in selecting "Gold Drop," which conveys to the mind so close an imitation of "Gold Dust," there was some intention or design upon the part of respondent to impose "Gold Drop" upon the public as that of "Gold Dust," or, at least, to obtain some advantage or benefit from complainant's advertised trade-name "Gold Dust"? Was not this result accomplished whether so intended or not?

These general views bring us directly to what we conceive to be the controlling question in this case. In the light of the evidence, and of all the surrounding circumstances presented herein, are the names "Gold Dust" and "Gold Drop" so similar in sound as to deceive the unwary or mislead an unsuspecting customer to accept "Gold Drop" for "Gold Dust"? This is the test that has often been applied in cases of this character.

In Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 Fed. 94, 97, Mr. Justice Bradley said:

"Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

It may be said that if one stops to reflect upon the names "Gold Dust" and "Gold Drop," and listens to the sound, he will discover that the names are not entirely similar. A layman, as well as a lawyer or a judge, might so decide upon a careful inspection and reading of the names. But in determining that question we must put ourselves in the place of a purchaser of ordinary caution, who asks for a washing powder called "Gold Dust," and from his standpoint determine whether he would be liable to be misled or deceived by the name "Gold Drop." Glen Cove Mfg. Co. v. Ludeling (C. C.) 22 Fed. 823; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 869; Manufacturing Co. v. Simpson, 54 Conn. 527, 545, 9 Atl. 395; Colman v. Crump, 70 N. Y. 573, 578.

The question whether complainant's trade-name of the words "Gold Dust" has been appropriated by respondent's use of the words "Gold Drop," separate and distinct from the use of symbols and devices adopted by complainant, may be said to be a close one. But, after a careful examination of the numerous authorities cited by the respective counsel upon this subject, we are of opinion that it must be answered in the affirmative. It is true that in many of the cases the alleged infringer dressed the words relied upon with such accessories that made it clear that the name used might be mistaken for the complainant's words, and the courts in such cases have usually placed their conclusions upon such grounds. The following cases shed some light upon the similarity of names that have been held to be infringements:

In Glen Cove Mfg. Co. v. Ludeling (C. C.) 22 Fed. 823, 825, the contesting parties were both engaged in the manufacture of corn flour for food. Complainant adopted and used the word "Maizena"; respondents, "Maizharina." The court held that the defendant's word

and picture, as applied by him to the packages of his corn flour, in connection with the similarity of his packages in form, size, color, printing, and other characteristics to the complainant's, were well calculated to lead purchasers to confuse the identity of the products of the respective parties. In the course of his opinion, Wallace, J., said:

"If the decision were to depend solely upon the question of a substantial similarity in the sonorous properties between the word used by complainant and that used by the defendant, decisions in analogous cases furnish sufficient authority for granting an injunction. Thus, the word 'Cocoine' has been held to be an infringement of a trade-mark in the word 'Cocoaine' (Burnett v. Phalon, *42 N. Y. 594); 'Bovina,' of the word 'Boviline' (Lockwood v. Bostwick, 2 Daly, 521); the word 'Appolinis,' of the word 'Appolinaris' (Action-Gesellschaft Appolinaris-Brunnen v. Somborn, 14 Blatchf. 380, Fed. Cas. No. 496); 'Hostetler,' of the word 'Hostetter' (Hostetter v. Vonwinkle. 1 Dill. 329, Fed. Cas. No. 6,714): 'Leopoldsalt,' of the word 'Leopoldshall' (Radde v. Norman, L. R. 14 Eq. 349). The rule is well settled that to enable the proprietor of a trade-mark to relief against an illegal appropriation it is not necessary that the imitation should be so close as to deceive persons seeing the two marks side-by side; it is sufficient if there is such a degree of resemblance that ordinary purchasers, using ordinary caution, are likely to be deceived."

In Estes v. Leslie (C. C.) 29 Fed. 91, Shipman, J., said:

"The name 'Chatter-Book,' as printed upon the cover of the defendant's books, is, in my opinion, an imitation of the name 'Chatter-Box,' which by association, when used upon books of a juvenile character, points 'distinctively to the origin or ownership' of the books to which it is applied; and the use by the defendants of the name 'Chatter-Book' upon the books which are represented by the exhibits in the case, the same being books of a juvenile character, of the general appearance, style, and manner of cover of complainant's books, should be enjoined pendente lite."

In Celluloid Mfg. Co. v. Cellonite Mfg. Co., supra, Mr. Justice Bradley said:

"The name 'Cellonite Manufacturing Company' is sufficiently similar to that of the 'Celluloid Manufacturing Company' to amount to an infringement of the complainant's trade-name. The distinguishing words in both names are rather unusual ones, but supposed to have the same sense. Their general similarity, added to the identity of the other parts of the names, makes a whole which is calculated to mislead."

In N. K. Fairbank Co. v. Central Lard Co. (C. C.) 64 Fed. 133, 135, it was held "that the word 'Cottoleo' is sufficiently similar to 'Cottolene' to infringe it."

The conclusions we have reached upon this point are not in opposition to the views expressed by the court in Coats v. Thread Co., 149 U. S. 562, 565, 13 Sup. Ct. 966, 37 L. Ed. 847, Sterling Remedy Co. v. Eureka Chemical & Mfg. Co. (C. C.) 70 Fed. 704, affirmed upon appeal in 25 C. C. A. 314, 80 Fed. 105, and Proctor & Gamble Co. v. Globe Refining Co., 34 C. C. A. 405, 92 Fed. 357, upon which respondent chiefly relies. These cases were decided on the dissimilarity of the labels used by the respective parties and other clearly-distinguishing features of the signs, symbols, and colors used thereon. The first case related to spool thread of "six cords." The court said:

"The controversy between the two parties * * * is reduced to the single question whether, comparing the two designs upon the main or upper end of the spool, there is such resemblance as to indicate an intent on the part of defendants to put off their thread upon the public as that of the plaintiffs', and thus to trade upon their reputation."

The second case related to certain medicinal tablets for the cure of the tobacco habit. The complainant used the trade mark "No-To-Bac" and the defendant "Baco-Curo." The court with reference to these names said it was not "seriously claimed that they are the same, or so similar that one could well be mistaken for the other." The third was a soap case. The complainant's trade-mark was impressed upon a wrapper or label used for covering cakes of washing soap known to the trade as "Everyday Soap"; on the wrapper or label of defendant's cakes the words were "Everybody's Soap." The case was disposed of by the distinguishing features of the respective labels. The court said: "The appellant relies not so much upon the infringement of its trade-mark as upon its complaint that the use by the defendant of its label is an unfair competition in trade." That case differs from the case in hand in this: that there the appeal was taken from an order denying a preliminary injunction, and the question to be determined was whether the court below had improvidently exercised its discretion, "and not whether, upon the final hearing, upon full view of all the facts in the case, this court would, upon the evidence before it, reach the same conclusion as that of the court below." Here we have the whole case before us for a decision upon its merits, and upon the whole case we are of opinion that the court erred in dismissing the bill and refusing to grant an injunction. The decree of the circuit court is reversed, and cause remanded, with directions to enter a decree in favor of appellant in accordance with the views expressed in this opinion.