GEORGE G. FOX COMPANY *vs.* CHARLES F. HATHAWAY & another.

Suffolk.    March 12, 1908. — May 21, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Unfair Competition. Equity Jurisdiction,* To restrain unfair competition.

In a suit in equity by a corporation engaged in business as a wholesale baker against the members of a firm of wholesale bakers, to restrain the defendants from unfair competition with the business of the plaintiff by selling loaves of bread made in imitation of bread manufactured and sold by the plaintiff, it appeared that the bread made and sold by the plaintiff was called "Creamalt" and that the loaves were of a size, shape, color and condition of surface which gave them a peculiar visual appearance that had come to be recognized by customers in connection with the name as indicating the place of manufacture and the quality of the bread, and that a very valuable good will had been acquired by the plaintiff in connection with the manufacture and sale of this bread, that the defendants began to manufacture and sell bread in loaves of the same size, shape, color and general visual appearance as the plaintiff's, so that an ordinary purchaser, not making a careful examination, would be likely to be deceived and to buy the defendants' bread in the belief that it was the same kind that he previously had bought of the plaintiff's manufacture, and there was evidence that the defendants' loaves were used by retailers for the purpose of such deceit, that the shape of the plaintiff's loaves was an oval one, which, although not entirely new, was uncommon, was uneconomical and less convenient for the cutting of slices and other purposes than the shapes generally adopted, and there was nothing to show that the defendants' business interests, apart from a purpose to deceive, required the combination of this shape with the size, color

and general visual appearance that had become associated with the plaintiff's trade in "Creamalt" bread, that each of the plaintiff's loaves had on the top a small paper label containing the words "Fox's Creamalt," that the defendants on each of their loaves put a broad paper band marked "Hathaway's Log Cabin Bread, Finest Flavor, Malted," that these bands were loose and not closely attached to the loaves, so that the bands were likely not to go with the loaves from the retailer to the customer unless the retailer was careful to preserve them, and if the retailer had an inclination to palm off the defendants' loaves for those of the plaintiff the loose bands would have no tendency to prevent this. *Held*, that the defendants unnecessarily, with no apparent reason except to take advantage of the reputation built up by the plaintiff, had produced and put upon the market an imitation of the plaintiff's loaves adapted to be used in deceiving that part of the public who had only a general knowledge and recollection of that which had been recommended to them or which they had been accustomed to buy, and a decree of the trial court dismissing the plaintiff's bill was reversed.

BILL IN EQUITY, filed in the Superior Court on January 25, 1907, by a corporation engaged in doing business as a wholesale baker against the members of a firm of wholesale bakers, to restrain the defendants from unfair competition with the business of the plaintiff by selling loaves of bread made in imitation of bread manufactured and sold by the plaintiff, as described in the opinion, praying for an injunction, the assessment of damages and further relief.

In the Superior Court the case was heard by *Fox*, J., who made the following memorandum of decision:

"The case at bar is quite unlike the case of *George G. Fox Co.* v. *Glynn*, 191 Mass. 344, for the defendants' loaf without the label is easily distinguished from the plaintiff's loaf, and the two loaves are conspicuously distinguished by their labels. A small label bearing the name 'Creamalt' is pasted upon the plaintiff's loaf, and a broad paper band, bearing the name 'Hathaway's Log Cabin Bread, Malted,' encircles the defendants' loaf. I think the defendants bring themselves well within the limits of permissible competition as established in *Flagg Manuf. Co.* v. *Holway*, 178 Mass. 83."

The judge made a final decree that the bill be dismissed with costs to the defendants; and the plaintiff appealed. The evidence was reported by a commissioner appointed by the judge under Chancery Rule 35.

*O. Mitchell*, (*J. T. Brennan* with him,) for the plaintiff.

*G. W. Anderson*, (*W. C. Rogers* with him,) for the defendants.

KNOWLTON, C. J.   This is a suit founded on the alleged unfair competition of the defendants, through the sale of a certain kind of bread made in imitation of bread previously manufactured and sold by the plaintiff.   The plaintiff's bread is called Creamalt, and the loaves are of a size, shape, color and condition of surface that gives them a peculiar visual appearance which has come to be recognized by customers in connection with the name, as indicating the place of manufacture and the quality of the bread.   There was evidence at the hearing that, by extensive advertising and by its method of conducting its business, a very valuable good will had been acquired by the plaintiff in connection with the manufacture and sale of this bread.   The facts relied on by the plaintiff to establish its rights were proved substantially as they are stated in the case of *George G. Fox Co.* v. *Glynn*, 191 Mass. 344, which relates to an interference by other defendants with the plaintiff's rights in the manufacture and sale of the same kind of bread.   The plaintiff was entitled to protection against any one seeking to avail himself of a demand in the market for the plaintiff's bread.

It appeared at the hearing that the defendants began to manufacture and sell bread in loaves of the same size, shape, color and general visual appearance as the plaintiff's, such that an ordinary purchaser, not making a careful examination, would be likely to be deceived, and to buy the defendants' bread in the belief that it was of the same kind that he had previously bought of the plaintiff's manufacture.   Not only was the general appearance of the defendants' loaf such as so indicate that it might easily be used to deceive purchasers who called for the plaintiff's bread, but there was considerable testimony to show that it was in fact so used by retail dealers.   The evidence introduced by the plaintiff tended strongly to establish its contention that the defendants were taking advantage of the good will of its business and of the demand for its bread by putting upon the market loaves similar in appearance, of their own manufacture.

To meet the plaintiff's case the defendants called witnesses to testify that retail dealers sometimes mislead purchasers by selling other kinds of bread which are different from those called for.   While perhaps this testimony weakened the force of the

plaintiff's evidence as to the deception practised upon the public in regard to the plaintiff's bread, it fell far short of answering it.

The principal contention of the defendants is that the use by the plaintiff of this combination of size, shape, color and condition of the surface, to produce a general visual appearance for its loaf of bread, made in part of malt and milk, gives it no rights, or at least, gives it no rights against one who uses only this combination, without using the same or a similar name. It also contends that, if such a combination calls for any precautions against deception, the defendants did all that they were called upon to do for that purpose.

In the first place it appears that the oval shape adopted by the plaintiff was uncommon, although not entirely novel, and that it was uneconomical, and less convenient and satisfactory generally for the cutting of slices for all kinds of uses than the shapes generally adopted. There was nothing to show that the defendants' business interests required the combination of this shape with the same size, color and general visual appearance that had become associated with the plaintiff's trade in this Creamalt bread.

The plaintiff had no exclusive right in any one of the features of the combination, and if the defendants had required the use of this combination for the successful prosecution of their business, they would have had a right to use it, by taking such precautions as would prevent deception of the public and interference with the plaintiff's good will. But the evidence shows that the defendants had no occasion to use this combination, and therefore they were not justified in producing an imitation of the plaintiff's loaves, the natural effect of which would be to deprive it of a part of its trade through deception of the public. There are numberless shapes and sizes in which loaves of bread may be produced, and various peculiarities of appearance in color and condition of surface. These that the defendants adopted had been combined to distinguish the plaintiff's Creamalt bread, and it was the duty of other manufacturers to recognize this fact. Not, indeed, to the abandonment of their right to do what was reasonably necessary to success in the management of their own business; but to the extent of so conducting their

business as not unreasonably and unnecessarily to interfere with the plaintiff's business through deception of the public.

But even if the defendants might have manufactured and sold loaves of this general visual appearance by carefully distinguishing their products from those of the plaintiff, they did not so distinguish them. It is to be noticed that the question is not whether dealers are liable to be deceived in buying from the manufacturer or the wholesaler, but whether the user is liable to be misled in buying from the retailer. The plaintiff's loaves are distinguished by their general appearance and a small paper label containing the words, "Fox's Creamalt," on the top of each loaf. The defendants made their loaves of the same general appearance, and put a broad paper band upon each loaf, marked:

"Hathaway's Log Cabin Bread"

"Finest Flavor, Malted."

This band had no such connection with the loaf that it would be likely to go with it from the retailer to the last purchaser, unless the retailer was careful to preserve it. If a retailer had any inclination to palm off a spurious product upon a consumer, the loose paper would have no tendency to prevent him. The defendants also had the initials " C. F. H." stamped in the bottom of their tins in which the loaves were baked. But it seems that this would not make such an impression upon the bottom of the loaf as to attract the attention of the average buyer, or to convey to him any meaning.

We are of opinion that the defendants unnecessarily, with no apparent reason except to take advantage of the reputation built up by the plaintiff, produced and put upon the market an imitation of its loaves, adapted to use in deceiving that part of the public who had only a general knowledge and recollection of that which had been recommended to them, or which they had been accustomed to buy. The principles which are stated at length in *George G. Fox Co.* v. *Glynn, ubi supra,* are applicable to the present case. The differences in the details of the defendants' imitation are not enough to call for a difference in the conclusion to be reached.

The case of *Flagg Manuf. Co.* v. *Holway,* 178 Mass. 83, relied on by the defendants, is materially different from the one at bar.

In that case it was assumed in the opinion, upon findings of the master, that the form of zither that the plaintiff made, which the defendant imitated, and which was not patented, had in it certain elements of value for use and for sale which were peculiar to that form. If, quite apart from the plaintiff's good will, belonging to him as a particular manufacturer, this form of instrument was peculiarly valuable, the defendant had a right to make others like it. The only right of the plaintiff was to have the defendant's goods so marked as to indicate unmistakably that they were the defendant's and not the plaintiff's goods. Such marking, so made that persons observing as particularly as they would be likely to observe in buying a musical instrument, could easily be put upon the instruments.

In the present case there are no intrinsic advantages in the combination which produces this general visual appearance, and there are some disadvantages in it. A very different general appearance will be just as advantageous to the defendants, unless they wish by deceit to get away the plaintiff's customers.

Moreover, it is not so easy to mark loaves of bread of the same size, shape and color, in such a way that they will readily be distinguished from one another by purchasers generally, as it is so to mark musical instruments. The fundamental question in every such case is: How can the rights and interests of both parties be protected most completely and equitably?

*Decree reversed.*