**GREEN et al. v. LUDFORD FRUIT PRODUCTS, Inc.**

No. 1023.

District Court, S. D. California, Central Division.

July 18, 1941.

Brezina & Buckingham, of Chicago, Ill., and Joseph F. Westall, of Los Angeles, Cal., for plaintiffs.

Rupert B. Turnbull, of Los Angeles, Cal. for defendant.

J. F. T. O'CONNOR, District Judge.

Plaintiffs, R. H. Green, A. M. Green, and J. B. Green, doing business as Green & Green, a copartnership, but formerly a corporation, are engaged in the business of marketing concentrates, extracts, and beverages for nonalcoholic carbonated soft drinks. Their principal place of business is Houston, Texas and their principal product is a soft drink known as "Fruit Bowl", an opaque, reddish carbonated mixture of fruit concentrate, artificial coloring, flavoring, and a small amount of benzoate of soda. Plaintiffs produce other beverages known variously as Golden Bowl, Silver Bowl, Lemon Bowl, Rose Bowl, Hawaiian Bowl, etc.

The defendant, Ludford Fruit Products, Incorporated, is a California corporation engaged in the manufacture of concentrate for a soft drink known as "Hollywood Bowl", which name the plaintiffs allege constitutes an infringement of their trade-

mark, and further allege that the defendant is guilty of unfair competition.

Plaintiffs have filed very thorough and exhaustive briefs exploring the entire range of this type of action. Cases have been cited by counsel in which numerous courts have held that the trade-marks being contested were confusingly similar. The court has examined with meticulous care all of the principal authorities relied upon by counsel for both sides in order to apply the law to the facts.

Plaintiffs contend mainly that the defendant's Hollywood Bowl resembles their Fruit Bowl so closely that the ordinary customer who consumes such products would be deceived into purchasing the defendant's concoction instead of the plaintiffs'. According to plaintiffs, the alleged similarity is so close that defendant's product can be passed off for plaintiffs' with whatever pecuniary loss results from the sale of the substituted article.

The alleged confusing similarity is derived from an imitation of the plaintiffs' general dress of the Fruit Bowl including the trade-mark, label, cap, bottle, color, and the fluid itself.

■ Certain evidence was introduced by the plaintiffs in the form of depositions in which it was claimed that there was some confusion in the goods inasmuch as several employees of plaintiffs' were sent to the store to purchase Fruit Bowl and claim that they were handed bottles of Hollywood Bowl. Ellis Mills and James Coleman, for example, are alleged to have entered stores in Houston, Texas, and asked for Fruit Bowl and claimed they were given Hollywood Bowl instead.

This line of testimony is interesting but not convincing.

The fact that 102,680,000 bottles of plaintiffs' Fruit Bowl were sold by between four and five hundred bottlers in 1940 with only a few cases of confusion being reported almost calls for the application of the de minimus non curat lex rule.

As was stated by Judge Soper in Dixi-Cola Laboratories, Inc. v. Coca-Cola Co., 4 Cir., 1941, 117 F.2d 352, at page 360: "When products of a similar nature are extensively advertised and widely sold, the possibility of some confusion between the goods of competitors and the goods of the principal producer cannot always be avoided; but under the circumstances pertaining to the manufacture and sale of 'Cola drinks', the amount of confusion in the absence of fraud will be negligible and may be disregarded." (Citing cases.)

■ There has been a great deal of discussion in this case, both at the trial and in the briefs, concerning the reddish color of the products made by the parties to this suit. Both are of substantially the same shade and appear to resemble diluted tomato juice. In the present suit, we find that the products have a citrus fruit base and are also artificially colored red. The source of the color is not indicated.

Plaintiffs claim that the defendant copied its color exactly in order to confuse the public into believing that it was plaintiffs' product that was being purchased.

The defendant, however, introduced evidence that he had used this opaque red color for his beverages more than ten years before this suit. The opaque character of the drink comes from the citric juice which is naturally not transparent.

The geneology of defendant's Hollywood Bowl shows that it is a direct descendant of Mickey Mouse Punch which was red. The defendant testified that he ceased to manufacture this drink under that name because the royalties paid to the creator of the Mickey Mouse character were too exorbitant for such a low priced article. It was then that Honolulu Punch was born which was apparently the same thing under another name. In 1938 it was known as Santa Anita Bowl and thereafter the name Hollywood Bowl was used to designate the same beverage.

In regard to the color of the drink, Mr. Ludford testified that he had no control over the shade of the eventual product which reached the public. He was engaged in the manufacture of the concentrate and the bottlers who used the syrup which came from his concern could change the shade by the amount of water they diluted it with during the bottling process.

The question of the color raises another problem. It is difficult to understand how the plaintiffs could claim a property right in the color alone. It is not subject to exclusive appropriation. Red is the natural color of several fruit drinks such as tomato and various berry juices. It is also used extensively in coloring artificially various soft drinks such as strawberry and cherry soda water. The color is nonfunctional and arbitrary, but the red shade probably

possesses a certain eye appeal not present in the paler colors.

Color alone can not be the subject of a trade-mark. No one could claim the right exclusively to use a certain color which was but one of the many characteristics of his product, and prevent the use of that color by others who manufactured similar articles.

■ The only way in which the color of the article could appear to be important in an action of this kind would be as one link in a chain of events showing acts of unfair competition wherein the defendant would be shown to have copied the general dress of the article including the various component parts, one of which might be a duplication of color.

It could be assumed, for example, that all taxicabs belonging to a certain company are painted yellow. This is their only distinguishing characteristic. They are stock automobiles just like thousands of others on the highways. The only way a prospective patron can tell from a distance whether or not he sees a taxi approaching is by its distinctive color. If he wants a ride, he would give an appropriate signal so the driver would stop for him. If, thereafter, a competing concern painted its taxis the same color, it would probably be guilty of unfair competition and the court would protect the public from being deceived, not that one company's service would not be as good as that of the other, but the public has a right to know from whom it is purchasing goods or whose facilities are being used. See Yellow Cab Co. v. Gibbons, Ill.1918, 8 T.M. Rep. 248, wherein it was stated:

"There is no exclusive property in color. But I am clearly of the opinion that plaintiff has so far established a trade-mark in the words 'Yellow Cab' 'Yellow Cab Co.' and the colors, get up, style, design, form and dress as they are combined and used upon its taxicabs as to entitle it to call upon a court of equity for protection against imitation designed to mislead the public and to deprive the plaintiff of the profits of the business."

Although the courts will not allow a monopoly in the use of a particular color, they will protect its use where it is part of a trading scheme such as the taxicab cases which rest upon peculiar facts.

■ The essence of an unfair competition action is not only the adjustment of the rights between the litigants, but the concomitant protection of the public. Purchasers have a right to be protected from frauds perpetrated by dishonest dealers who attempt to simulate the goods of another in order to deceive the unwary into purchasing the copy rather than established original.

Unlike a copyright or patent case in which the rights of the creator or inventor originate in a monopoly grant from the government, unfair competition, of which trade-mark infringement is but a part, is grounded on the right of both dealer and purchasing public to be protected from frauds of which both are the victims.

No fraudulent scheme to deceive the public exists in the present case, however. It cannot be demonstrated that the defendant was guilty of acts of unfair competition by using the same color found in plaintiff's beverage. Ludford testified that he had used this color over ten years ago.

The color of the liquid might be of some importance when it is used in clear glass bottles where the color can be seen. One of the many exhibits, however, was a dark brown bottle of a squat "steinie" type with which plaintiff intends to have its product bottled. It does not matter what color the liquid is when this type bottle is used since it cannot be ascertained when placed in brown bottles. Although plaintiffs were not using this kind of bottle when this action was commenced, they apparently do not consider the color of the product so important or they would continue to have it bottled in clear glass bottles.

In Pacific Coast Condensed Milk Co. v. Frye & Co., 1915, 85 Wash. 133, 147 P. 865, the facts indicated that "Carnation" condensed milk was placed in cans with red and white labels. A similar color scheme was employed for "Wild Rose" condensed milk. An injunction was denied concerning the use of similar colors although there were other differences present. See, also, Vittucci Co. v. Merline, 1924, 130 Wash. 483, 228 P. 292, 14 T.M.Rep. 484.

In view of these observations, such similarity in color as may exist between plaintiffs' Fruit Bowl and defendant's Hollywood Bowl does not justify a finding that this was an element of unfair competition, nor could it constitute an infringement of trade-mark.

■ Turning now to the labels on the bottles of the parties, we find that plaintiffs employed a label with a blue background the center of which was adorned with a representation of a punch bowl filled with

a red liquid. Superimposed were the words "Fruit Bowl" in large block style letters in white with a narrow blue border. On the left of the label is the green seal of the plaintiffs, and to the right of this seal the plaintiffs' name and address lettered in green and red.

Compared to the defendant's label, it cannot be seen how they could possibly be confused. It would be difficult to see how two labels could be more distinctive. Bright orange, yellow, black and white are the colors used in identifying defendant's product. In an orange block placed on a yellow background the word "Hollywood" is found in block letters with the orange background showing through. Below that in small letters in solid black is the word "Bowl." Above the orange block is a black strip of film with the words "The Stars Drink" printed in white and below the "Hollywood Bowl" are the words "It's Super Colossal" also printed in white on a strip of film. There are four white stars placed above the word "Hollywood" which tends to carry out further the Hollywood theme of defendant's label.

It is probably true that these paper labels are not widely used on bottles because they soak off when placed in ice water dispensers. However, it was plaintiff who claimed the alleged similarity in dress, one part of which was the label. Assuming that the use of paper labels is not widespread in the industry, the fact remains that they are used to some extent, and when so used there is no similarity between those of the plaintiffs and defendant.

Again referring to plaintiffs' new container, the brown bottle, it may be seen that the label thereon is in bright orange with white lettering, two colors used by the defendant. It would thus appear that if any copying of colors was done in connection with labels, the plaintiffs did it.

■ Another alleged similarity is the use of a red and white color scheme for the crowns. Plaintiffs' Fruit Bowl crown as shown in their exhibit 34 is of the usual circular shape having a white background and a narrow ring of red on the border. The background shows a bowl containing red fluid. Over the lower portion of the bowl are the block style words, "Fruit Bowl", which are formed by a red outline with the unpainted metal of the cap showing through and giving the words a silver color.

Defendant's crown, on the other hand, shows a solid red background with white lettering, three white stars on the top of the crown above the word "Hollywood" and stars all around the ruffled edge which is turned down over the top of the bottle. There are no stars on plaintiffs' crown. Defendant's exhibit A is capped with the same style crown, but with the red and white colors reversed, that is, instead of a red background with white letters, it has a white background with red letters. The designs are identical, however.

If, as is often the case, these bottles are placed in iced containers so that only the crown and neck of the bottle are visible, purchasers would not be deceived into believing that plaintiffs' product was that of defendant since the two are decidedly different. They are not confusingly similar.

From the number of red and white crowns used in the trial, it would seem that this was a most prevalent color combination. One of the crowns introduced was that of Coca-Cola which uses the red and white combination, and it has probably been in the field much longer than either of the parties here.

■ Concerning the crowns, therefore, it does not seem to the court that there is any element of unfair competition or trademark infringement here. The only similarity is the use of the same word "bowl" as part of the trade name of each product. This would not tend to confuse the public, however, since the words used in combination with "bowl" are so dissimilar.

It appears to the court after a careful perusal of the many authorities cited by both counsel, that there is no pattern into which these cases fall so that there could be an accurate prognostication as to the outcome. The final result cannot be known until the opinion is written by the highest tribunal. Each case arises out of its own peculiar facts.

Plaintiffs have set up in their briefs parallel columns of trade-names which various courts have found to be deceptively similar. Defendant followed a similar practice, but not to the same length. There seems to be no common denominator. Where authorities on both sides mentioned only the trade-names, it would be difficult, if not impossible, to determine which ones had been held to be deceptively similar without the presence of additional facts concerning the cases.

An examination of these cited authorities reveals that in many cases where the names neither looked nor sounded very much alike, the court held that they were confusingly similar. And conversely, in some cases in which the names did look or sound alike or in which there was found in the defendant's trade-name the same word as used by plaintiff, the court held that there was no deceptive similarity. See, for example, Dixi-Cola Laboratories, Inc. v. Coca-Cola Co., 4 Cir., 1941, 117 F.2d 352, at page 360, in which "Dixi-Cola" and "Coca-Cola" were products involved; also Miles Laboratories, Inc. v. Pepsodent Co., Cust. & Pat.App. 1939, 104 F.2d 205, concerning "Pepso-Seltzer" and "Alka-Seltzer."

The defendant contends that the words "fruit bowl" cannot be exclusively appropriated by plaintiffs since they are ordinary English words in everyday usage and they have no secondary meaning pertaining to plaintiffs' product. The plaintiffs then claim that they were the first to use the word "bowl" in the sense of meaning "drink". In other words, "Fruit Bowl" means "fruit drink." The defendant then claims that the word bowl has been used to apply to drink for hundreds of years and that even here the plaintiff could have no property right because this is an old meaning. As authority, defendant cites quotations from Chaucer, through Old King Cole of the Mother Goose Rhymes and various English poets such as Scott, and others, to substantiate his claim that the word "bowl" meant "drink" such as when the old bards spoke of "wassail bowl" they had in mind the drink itself. In answer to these contentions, the plaintiffs claim that a word which has an obsolete meaning and which is unintelligible and nondescriptive to the general public may be regarded as arbitrary and subject to being appropriated as a valid trade mark.

In regard to this point, the arguments on each side seem rather unconvincing. In the Southern District of California the words, "Hollywood Bowl" first carry the meaning of a large open air amphitheatre wherein the famous summer concerts, the "Symphonies Under the Stars" are presented. In like manner, a Connecticut court dealing with the words, "Yale Bowl" would conjure up only the image of a football stadium. Similarly, plaintiffs' "Rose Bowl" does not impress this court as meaning "a rose drink", but rather the Pasadena football stadium. It would seem to be a rather strained construction to attach the secondary meaning advanced by plaintiffs to their product.

In conclusion, it must be accepted that there is no fixed and immutable principle, no inflexible rule as to what names would constitute unfair competition. The question is more properly whether or not the use of the particular name would cause confusion among consumers as between the product of the plaintiff and that of the defendant.

A recitation of the cases, therefore, in which the names were held to be confusingly similar and those in which they were held not to be, would serve no useful purpose. Each case of this type, as heretofore pointed out, rests upon its own facts, and the facts elicited in this trial indicate to this court that there was no unfair competition and no infringement of trade-mark.

Findings of fact and conclusions of law will be prepared by counsel for the defendant in conformity with this opinion.