# HI-LAND DAIRYMAN'S ASS'N v. CLOVERLEAF DAIRY

No. 6705. Decided Sept. 2, 1944. (151 P. 2d 710.)

Rehearing denied Dec. 13, 1944.

See 63 C. J. S. Trade-Marks and Trade-Names and Unfair Competition, Sec. 104, 52 Am. Jur. 564.

*Warwick C. Lamoreaux,* of Salt Lake City, for appellant.

*Thatcher & Young,* of Ogden, and *Rawlings, Wallace & Black,* of Salt Lake City, for respondent.

LARSON, Justice.

Defendant has been in the dairy business in Salt Lake City and vicinity for more than twenty years, supplying its products to customers by house delivery and also through grocery stores and other retailers. Prior to 1939 defendant, and all other local dealers in milk, buttermilk and cream, supplied such products in standard glass bottles. Sometimes such bottles had the name of the dairy printed on, or blown in the bottles; sometimes the bottles were plain glass. Often the dairies used one another's bottles. *Clover Leaf Dairy Co.* v. *Van Gerven,* 72 Utah 290, 269 P. 1020, 60 A. L. R. 281. The cap, however, was always stamped with the name of the dairy producing the contents of the bottle.

Plaintiff, an association of men operating dairy herds on the higher lands in Summit and Wasatch Counties, entered the Salt Lake or local dairy market in 1939, supplying its products to and dealing exclusively with stores. At that time it brought onto the local market the paper carton for dairy products, using what is known as the Pure-Pak carton. Shortly after the entry of plaintiff into the local market, defendant also came out with a paper container for its dairy products, using what is known as the American Can carton. These were both made of a fibre board or paper compound and coated with paraffin. The carton first used by defendant was different in design, construction, color

and dress from that used by plaintiff. About two years later defendant changed from the American Can to the Pure-Pak carton used by plaintiff, and at the same time changed the design or dress of its cartons. It is this change of which plaintiff complains.

When plaintiff introduced the use of the paper carton or container for dairy products, it introduced for the first time a definite color scheme for its products to aid in identifying them to the purchaser, especially in the self-service stores. This color scheme called for white containers with red printing for milk, green printing for buttermilk, and blue printing for cream. All lettering was in Gothic type and the general design was the same on all containers except for the color variation noted and the use of the word "Milk," "Buttermilk" or "Cream." The containers used by defendant from 1939 to 1941 were a light tan background with red printing and dressing and the featured part of the printing, the word "Cloverleaf," occurring twice, and "Tastes Better" were in script type. This container had a flat top and solid red band 1¼ inches wide around the container near the top and the bottom. In 1941 when defendant changed to the Pure-Pak carton, the same white carton used by plaintiff, it changed the dress, designing and printing from what it had theretofore used. It also adopted a color scheme of red printing for milk, green printing for buttermilk, and blue printing for cream. The green and the blue were of a distinctly different shade from that used by plaintiff. Later, and before the trial of this action, defendant changed to orchid color on its cream containers. No complaint is now made as to the cream containers, and no insistence placed upon the objection to the use of the buttermilk containers. Plaintiff's efforts are directed to enjoining the use of the milk containers with their present color scheme, design and dress. We shall not attempt a description of the two cartons. The accomp-

anying cut will illustrate the likenesses and differences better than any verbal description:

**ONE QUART**

**PASTEURIZED**

## MILK

**GRADE A**
**PASTEURIZED MILK**

# CLOVER LEAF

**PERFECTLY PASTEURIZED**

# MILK

**FROM THE HOME OF FINE DAIRY PRODUCTS**

## Tastes Better

**PREMIUM**

# MILK

**THE MILK ▲ ▲ ▲ YOUR CHILDREN ▲ ▲ ▲ DESERVE**

**ONE QUART**

**Pour like this**

**GRADE A PASTEURIZED**

The products of plaintiff and defendant are necessarily displayed for sale in more or less proximity to each other, since both must be kept and displayed in the limited space of a refrigerator. The evidence shows that in most stores the arrangement of bottles in the refrigerators is left to the deliverymen of the respective concerns, though the store owner usually indicates the space to be allotted to each company's product.

All of the evidence goes to the business done in self-service stores, where the customer selects the goods to be purchased without the assistance of a clerk. In that regard the case differs from any cases cited by the parties or any that we have been able to find. Other cases deal almost entirely with instances of clerks handing a customer one product when he asked for another, the deception being made possible by the similarity in the dress or wrappings of the two products. In the instant case there is a better opportunity for personal observation by the customer, as he makes his own selection from the shelves. Nevertheless there is evidence of confusion—several of plaintiff's witnesses testifying that they purchased one brand of milk when they intended to get another, and some store managers testifying that they had seen such occurrences a number of times. Defendant's evidence, on the other hand, was to the effect that there had never been any substantial confusion, and that what confusion there had been was just after the new Cloverleaf carton came onto the market; and that this confusion had long since ended. Plaintiff offered the testimony of ten additional witnesses of actual cases of confusion, and the trial court refused to hear such witnesses, holding that their testimony was merely cumulative. After refusing to listen to such evidence, the court then found that: "A few purchasers of milk bought the defendant's milk when they intended to buy that of the plaintiff," and going on "All of them [mistaken purchases] resulted solely from the indifference or carelessness of the customer." It is true, as the trial court said, that it is not necessary to show actual confusion in a case of this kind. *Grocers*

*Baking Co.* v. *Sigler,* 6 Cir. 132 F. 2d 498; *Reardon Labs* v. *B. & B. Exterminators, D. C.,* 3 F. Supp. 467; *Yellow Cab Co.* v. *Knox,* N. J. Ch., 144 A. 11; *Taendsticksfabriks Aktic-bolagat Vulcan* v. *Myers,* 139 N. Y. 364, 34 N. E. 904; *Town Taxi Serv. Corp.* v. *Green Cab & Brok. Co.,* Sup., 38 N. Y. S. 2d 529; *American Fork & Hoe Co.* v. *Stampit Corp.,* 6 Cir., 125 F. 2d 472, 473; *Brown* v. *Seidel,* 153 Pa. 60, 25 A. 1064. But where actual confusion is shown a stronger case is made, as there is not then the necessity of relying on probabilities. Plaintiff admits, and it is apparent from an inspection of the exhibits, that in the instant case, a person looking carefully at the two cartons can readily distinguish between them, but that is not the test to be applied in these cases. *O'Sullivan Rubber Co.* v. *Genuine Rubber Co.,* 1 Cir., 279 F. 972. Nor is the fact that defendant puts its name on the carton of itself sufficient to prevent confusion. *Reardon Labs* v. *B. & B. Exterminators,* supra. See also *Town Taxi Serv.* v. *Green Cab & Brokerage Co.,* supra. It is not necessary that defendant's carton be an exact replica of those used by plaintiff before their use may be enjoined. There need only be such a resemblance between the dress of the competing goods as would or might deceive the ordinary purchaser. *Chesebrough Mfg. Co.* v. *Old Gold Chem. Co.,* 6 Cir., 70 F. 2d 383; *Helmet Co.* v. *Wm. Wrigley, Jr., Co.,* 6 Cir., 245 F. 824; *Wm. Wrigley, Jr., Co.* v. *Colker, D. C.,* 245 F. 907 (see illustration therein); *N. K. Fairbank Co.* v. *R. W. Bell Mfg. Co.,* 2 Cir., 77 F. 869; *Pacific Coast Condensed Milk Co.* v. *Frye & Co.,* 85 Wash. 133, 147 P. 865. With this test in mind, it is easy to see the relevancy of evidence going to show confusion. While the case might be complete by showing merely that there was a reasonable probability the design might deceive, such probability is strengthened when it is shown that numerous individuals —ordinary purchasers—have been deceived in making their purchases.

The cases recognize that there are varying degrees of care given to the purchase of different articles by the

ordinary purchaser. One ordinarily does not give the same degree of attention to the purchase of small inexpensive articles as to larger and more expensive articles, or ones which are purchased less frequently. *Helmet Co. v. Wm. Wrigley, Jr., Co.*, supra; *J. N. Collins Co. v. F. M. Paist Co.*, D. C., 14 F. 2d 614; *N. K. Fairbanks Co. v. R. W. Bell Mfg. Co.*, supra. Evidence herein shows that in the purchase of milk, which is an inexpensive item, frequently purchased, the degree of care exercised by the ordinary purchaser in making his selection is not great. Selections are often made hurriedly and upon general impressions as to size, color and location of the desired product. For as one customer put it, "I don't go to a grocery store to read." The fact that the ordinary customer in buying his milk purchases by the general impression and uses very little care in selection must be considered in determining whether the new Cloverleaf carton was likely to deceive. In other words, the purchaser should be considered as the ordinary buyer, rather than as an expert.

Plaintiff does not complain of the use by defendant of the Pure-Pak carton, since it is a patented article, and the right to use it is sold by the owner of the patent in such manner as he sees fit. Nor does he complain of defendant's use of the same shade of red color, as all cases recognize the rule that color alone is not subject to appropriation by any one manufacturer. *Diamond Match Co. v. Saginaw Match Co.*, 6 Cir., 142 F. 727; *Green v. Ludford Fruit Prod.*, D. C., 39 F. Supp. 985; *Southern Cal. Fish Co. v. White Star Canning Co.*, 45 Cal. App. 426, 187 P. 981; *A. G. Morse Co. v. Walter M. Lowney Co.*, D. C., 256 F. 935. It is the combinations of color and design that are protected. *Lalance & Grosjean Mfg. Co. v. National Enameling & Stamping Co.*, C. C., 109 F. 317. For the same reason plaintiff does not complain of defendant's use of the bold Gothic type on its cartons. What plaintiff does complain of is the combination of all of these features, and a design or massing of color and print on defendant's cartons so similar to plaintiff's use of color, design and type that the

buying public, giving only the attention ordinarily given to the purchase of milk will or might be deceived. Since the evidence shows that most customers make their selection by an overall impression of the cartons in a mass display, the distribution of color mass on the cartons is particularly important. Both cartons have the same heavy color mass at the top, lighter mass, or thin effect in the center, and heavier mass at the bottom. The full effect of such similarity upon the purchaser can best be noted by seeing a number of cartons of each brand displayed together as they are when offered for sale in the self-service stores. Such display was arranged for the benefit of the trial court, and the exhibits used are before us. The massing of the cartons in this manner makes them appear much more similar than they are when viewed singly sided by side.

It appears from the record that at the time defendant changed to the Pure-Pak carton and the new design, print and dress, the plaintiff's milk sales at self-service stores were considerably larger than those of defendant; and that at the time of trial plaintiff did not have this lead in number of sales. Plaintiff contends that defendant changed its containers and dress to simulate the plaintiff's for the purpose of creating a situation whereby the patrons of plaintiff would mistakenly pick up a Cloverleaf carton instead of a Hi-Land, and thus enable defendant to raid plaintiff's business. As proof of this, plaintiff notes the following points: A change by defendant from the American Can flat top container theretofore used by it to the roof top Pure-Pak container used by plaintiff; a change in basic color of the container from light tan to the white base used by plaintiff; the abandonment of the script type theretofore used by defendant for the bold Gothic type used by plaintiff; the elimination of the two red bands about the container, which had prior to that time been the distinguishing feature of the dress on the Cloverleaf carton; the adoption of a new design or dress for the container showing a heavy massing of red consisting of Gothic type and a picture or design near the top of the container; a short space

of small print below this around the middle of the carton; a heavier massing of red near the bottom, but not as heavy as that near the top, giving the general overall picture of red print on white background so arranged as to set the general groupings of color areas of approximately the same size and in the same relative positions on the cartons as plaintiff was using. This it is argued makes a general picture impression on the mind of the purchaser that the cartons are all the same, and since plaintiff (Hi-Land) had established its trade and good will by that general picture impression (mental image), defendant was raiding plaintiff's established business and good will by deceiving and misleading the public—an unfair method of competition.

Defendant answers that the change from the American Can to the Pure-Pak container was made for purely economic reasons. The former was made up ready for use by the manufacturer, and therefore required much space in transportation and storage at the dairy. The Pure-Pak container came from the factory "knocked down" and through a machine was, at the dairy, folded, waxed, filled and sealed, thus affording a considerable saving to the dairy in storage cost and space required. The base color of the containers is a matter of the manufacture, though defendant admits it preferred the change to a white base because red on white is the most eye catching, attention attracting color combination, and therefore best for display purposes. Sample cartons of various color uses and combinations were before the court, from which plaintiff argues that defendant could have used a different color scheme; and defendant argues that such color schemes are far inferior to red on white for display purposes. Defendants explains its abandonment of the script type for Gothic by showing that Gothic being bolder and contrastic, attracted the attention of the shopper more readily than the softer inclined "lazy" lettering of the script type. As to the abandonment of the two red strips around the old cartons, defendant says such action was against its wishes, but was done at the urging of the manufacturer who explained that a color band of that width

interfered with successful waxing and might cause trouble in the handling of milk. The record shows that the manufacturer suggested in lieu of the solid red bands, the use of alternating narrow lines of red and white which would preserve a red band effect and still allow the wax to penetrate the material of the carton so as to hold the wax on the carton and effectively seal it. There is no doubt that defendant at first requested that its new cartons have the red bands, and that the manufacturers advised against the solid bands. No explanation is offered as to why the suggestion of the manufacturer to preserve the effect of the bands by the use of alternating red and white lines was not adopted; although it must be conceded that while such pattern would preserve the general effect of a red band, it would show a much lighter shade of red upon which white print would not stand in such bold contrast. As to the general similarity of the color pattern on the carton, defendant argues that it did not seek to simulate plaintiff's pattern to deceive or mislead plaintiff's customers but that it adopted the same general color pattern on the carton for the same reason plaintiff presumably had adopted it—because advertising experts said that red on white, massed in this way, was the most attractive and effective pattern arrangement for display purposes.

Defendant thus offers an answer to, or explanation of each of the matters of which plaintiff complains. Taken singly such explanations may suffice, but when all the facts are considered together, do they show an intent, an effort, an act so closely simulating the design and dress of plaintiff's cartons as to cause confusion or or mislead the buying public into taking Cloverleaf milk when they intended to take and purchase Hi-Land milk? The foundation of plaintiff's claim is the fact that the combinations of white roof-top carton, Gothic type, red printing, arrangement of color massing, and general design, producing a particular visual appearance were all adopted by plaintiff when not in use by any one else, and are such a combination as no one needs to use. The general right

of defendant to use any shape or color of carton, style or color of print that they choose does not give them the right to adopt a combination of these which will mislead the public to the plaintiff's detriment and to their own advantage. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.*, 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377; *Soxlehner* v. *Appollinaris Co.*, 1 Ch. (1897) 893; *Globe-Wernicke Co.* v. *Brown*, 7 Cir., 121 F. 90, 57 C. C. A. 344. There can be no doubt that defendant's legitimate business can be properly conducted without giving its carton this very similar and misleading appearance. It is enough to require an injunction if it knowingly places in the hands of a retailer an instrument which may deceive the public. *N. K. Fairbank Co.* v. *R. W. Bell Mfg. Co.*, supra; *George G. Fox Co.* v. *Glynn*, 191 Mass. 344, 78 N. E. 89, 9 L. R. A., N. S., 1096, 114 Am. St. Rep 619; *Hostetter Co.* v. *Becker*, C. C., 73 F. 297; *N. K. Fairbank Co.* v. *Luckel, King & Cake Soap Co.*, 9 Cir., 102 F. 327, 42 C. C. A. 376. And where a competitor in packing, labeling, dressing, use of colors, and arrangement of type so closely simulates the goods of another, although using a different name as to enable persons handling such goods to palm them off on customers, as the goods of such rival, it is unfair competition, and such simulation will be restrained. *Holeproof Hosiery Co.* v. *Wallach Bros.*, C. C., 167 F. 373; *R. J. Reynolds Tobacco Co.* v. *Allen Bros. Tobacco Co.*, C. C., 151 F. 819; *George G. Fox Co.* v. *Hathaway*, 199 Mass. 99, 85 N. E. 417, 418, 24 L. R. A., N. S., 900. In the last case the court said:

"The plaintiff had no exclusive right in any one of the features of the combination, and if the defendants had required the use of this combination for the successful prosecution of their business, they would have had the right to use it, by taking such precautions as would prevent deception of the public and interference with the plaintiff's good will. But the evidence shows that the defendants had no occasion to use this combination, and therefore they were not justified in producing an imitation of the plaintiff's loaves, the natural effect of which would be to deprive it of a part of its trade through deception of the public. There are numberless shapes and sizes in which loaves of bread may be produced, and various peculiar-

ities of appearance in color and condition of surface. These that the defendants adopted had been combined to distinguish the plaintiff's Creamalt bread, and it was the duty of other manufacturers to recognize this fact. Not, indeed, to the abandonment of their right to do what was reasonably necessary to success in the management of their own business; but to the extent of so conducting their business as not unreasonably and unnecessarily to interfere with the plaintiff's business through deception of the public."

However, an intent to simulate plaintiff's carton and get his business, is not alone sufficient. *N. K. Fairbank Co.* v. *R. W. Bell Mfg. Co.,* supra. But defendant must adopt the similar carton to accomplish that act, and it must result in a deception or probable deception of the public. *Reardon Labs* v. *B. & B. Exterminators,* supra; *N. K. Fairbank Co.* v. *R. W. Bell Mfg. Co.,* supra; *Bjelland & Co.* v. *Victor M. Calderon Co.,* Sup., 9 N. Y. S. 2d 720; *Sun-Maid Raisin Growers* v. *Mosesian,* 84 Cal. App. 485, 258 P. 630.

In the comment on Clause a, paragraph 729, Restatement of Torts, we read: "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." The Restatement paragraph above cited refers to trademark infringement, but seems particularly apt as a concise statement of the questions properly considered in unfair competition cases. In fact, as the court said in the *Coca-Cola Co.* v. *Nehi Corporation,* Del. Ch. 25 A. 2d 364, 369: "Trade-name or trade-mark infringement is a narrower term than unfair competition, but it is a species of it. * * * Any unfair conduct, the natural and probable result of which is to permit the goods of one person, of the same kind, to be passed off for those of another, is usually unfair competition, in some form, and in a proper case will be enjoined. * * *" Or as said in *Kawneer Co.* v. *McHugh,* D. C., 51 F. 2d 560, 564: "The test of unfair competition is whether the maker or seller of the goods is, by his conduct, passing off his goods as the complainant's goods, and not whether the public is likely to be deceived as to who is the maker or seller of the goods." (Citing cases.) Here we have

the similar container, and evidence from which it must be found that the public was deceived and confused by such similarity. Under these circumstances, it is not necessary to show the intent of defendant. We quote from *Helmet Co.* v. *Wm. Wrigley, Jr., Co.*, 245 F. 831: "The defendant is therefore chargeable with knowledge of the inevitable consequences of such conduct, and so is open to the inference that it intends its products to be confused with and mistaken for complainant's product. *Elgin Nat. Watch Co.* v. *Illinois Watch* [-*Case*] *Co.*, 179 U. S. 665, 674, 21 S. Ct. 270, 45 L. Ed. 365; *Samson Cordage Works* v. *Puritan Cordage Mills* [supra], 6 Cir., 211 F. [603], 608; *Fuller* v. *Huff*, 2 Cir., 104 F. 141, 145, 43 C. C. A. 453, 51 L. R. A. 332; *Collinsplatt* v. *Finlayson*, C. C. 88 F. 693; *Meccano* v. *Wagner*, D. C., 234 F. 912, 918; *Wm. Wrigley, Jr., Co.* v. *L. P. Larson, Jr., Co.*, C. C., 195 F. 568, 570; *Von Mumm* v. *Frash*, C. C., 56 F. 830, 837; *Braham* v. *Beachim*, 7 Ch. D. 848, 856; *Wirtz* v. *Eagle Bottling Co.*, 50 N. J. Eq. 164, 168, 24 A. 658; *Northwestern Knitting Co.* v. *Garon*, 112 Minn. 321, 326, 128 N. W. 288." See also *My-T Fine Corp.* v. *Samuels*, 2 Cir., 69 F. 2d 76; *Holland Furnace Co.* v. *New Holland Mach. Co.*, D. C., 24 F. 2d 751.

There was some evidence that plaintiff has suffered from a shortage of milk so that he could not at all times supply the entire demand for his products. The defendant argues that because of this fact, plaintiff can show no damage because he already has all the business he can handle, and the fact that defendant has been selling its products to plaintiff's customers does not damage plaintiff. As we view the matter, however, it is not necessary to show actual pecuniary loss. As shown by the authorities above cited, it is unnecessary to show an actual deception of the public, or actual confusion. This being the case, a showing of monetary or business loss could not be required, since it is only through deception and confusion that such loss results. It is enough if it be shown that there is the probability of confusion or deception. Equity will then enjoin acts making this possible, and prevent any

future business damage. In the instant case, were the practices complained of allowed to continue, they might well result in damage to plaintiff. His shortages of milk may have now been remedied or might be remedied in the future. But whether they are or not, plaintiff has the right to sell its products without having defendant infringe upon its market or good will.

The case is reversed and remanded to the District Court of Salt Lake County with directions to enter findings of fact and conclusions of law to the effect that defendant in adopting its present milk carton knowingly imitated and simulated plaintiff's container so closely as to cause confusion and secure for itself some of plaintiff's trade; that the pattern and design adopted had the effect of creating confusion, misleading the public, and securing some of plaintiff's business; its use constitutes unfair competition on defendant's part and should therefore be enjoined. Let injunction issue accordingly. Costs to appellant.

WOLFE, C. J., and McDONOUGH, WADE, and TURNER, JJ., concur.