AINSWORTH v. GILL GLASS & FIXTURE CO.

No. 6980.

Circuit Court of Appeals, Third Circuit.

Aug. 10, 1939.

Rehearing Denied Oct. 3, 1939.

492

Harry Lea Dodson, of New York City, for appellant.

John W. Hallahan, of Philadelphia, Pa. (George F. Scull and John M. Cole, both of New York City, of counsel), for appellee.

Before BIGGS, MARIS, and BIDDLE, Circuit Judges.

BIGGS, Circuit Judge.

The appellant, Ainsworth, filed his bill of complaint in the court below alleging that the appellee, Gill Glass and Fixture Company, was guilty of infringement of United States Patent No. 1,957,192, issued May 1, 1934, to the appellant upon an application filed by him upon February 11, 1932, for a lighting fixture. He also alleged that the appellee was guilty of unfair competition in offering for sale lighting fixtures so closely resembling that disclosed by the patent that the public was unable to distinguish one from the other.

The appellant prayed for an injunction, for an accounting, and for other relief.

### The Patent.

The patent is in the art of semi-indirect lighting. In semi-indirect lighting most of the light from a lighting fixture is reflected against some external area, such as a ceiling, diffusing the rays of light. Though semi-direct lighting is an improvement over direct lighting, even in semi-indirect lighting damage is worked to eyesight if the "hot spot" or glare of the lighted lamp is permitted to stand out in silhouetted brightness from its surroundings, creating an annoying area of bright light in the midst of the diffused light. The appellant has endeavored to design a lighting fixture for semi-indirect lighting of maximum efficiency, giving as complete a diffusion of light as is possible and obliterating the hot spot or silhouetting of the bowl of the lamp against its surroundings. The question presented is whether the appellant's disclosures constitute invention.

In the lighting fixture described in the patent the source of light, an electric lamp, is covered by a diffusing reflector of translucent material in the shape of a shallow inverted cone placed below the lamp. The reflector intercepts the down flowing light and redirects the greater part of it over a broad ceiling area. The appellant states in his brief that his invention consists of "* * * the combination of a high powered light bulb in close proximity to the apex of a small shallow conical reflector, the wall of which increases in thickness from the perimeter to the vertex. The glass reflector is constructed so that the various rays impinging on the inner surface, will be reflected over an ever widening area above the fixture, and is supported by chains which are secured to a long socket cover carried by a slender stem." The appellant contends that he thus combines a comparatively small translucent reflector with an intense source of light and that therefore light is broadly distributed over the ceiling. He accomplishes this result, he states "* * * by gradually increasing the density of a shallow translucent reflector from perimeter to the apex, and thereby avoids the glare which would result from undue brightness on the outside of the reflector where the lamp is in close proximity." This is the gist of Ainsworth's disclosure as contended by him.

The arrangement disclosed by the patent undoubtedly possesses great advantages.

The source of light is so close to the reflector that it is shot against the ceiling with nearly full effect. The lamp is low in relation to the reflector and therefore is screened from direct view. If a long socket cover be used the depth and diameter of the reflector can be reduced to a very small size even though a large lamp is employed. The combination of elements suggested permits the use of a reflector so shallow that the angles of the reflected rays of light will be very broad and therefore the light will be widely diffused.

In his patent specification the appellant states:

"My invention has for its principal object to combine an electric lamp with a diffusing reflector of translucent material shaped like a basin which will intercept all the light that normally would be distributed downward and redirect the major portion of it over the broadest possible ceiling area above the device in order to artificially illuminate interior rooms by the most economical semi-indirect lighting system."

"I obtain this result by shaping the reflecting surface of a basin constructed of diffusing glass formed to conform to a conic section so that the various rays of light impinging on the inner surface will be reflected over an ever widening area above the fixture."

"A further object is to augment the reflection factor by increasing the density of the glass gradually from the perimeter to a maximum thickness at the center or bottom of the basin."

\* \* \*

"It will be apparent from the foregoing description that, by my invention of making the glass basin more dense towards the bottom, either by thickening the glass or by applying a graded coating of more dense substance, I will be able to use more intense light sources close to the bottom in comparatively small glass basins and distribute the light over broad areas of ceiling without unduly brightening the outside surface of the glass basin."

The patent contains six claims. Three of these, viz., 1, 2 and 4, claim a combination of elements. Claims 3, 5 and 6 are for the translucent reflector.

Claim 1 is typical of the combination claims. It is for: "The combination with a light source and means including a socket for supporting the light source, of a conical-shaped basin of translucent material, a socket cover, and means interposed between the socket cover and the basin for supporting said basin in close proximity to the light source, said basin having side walls of increasing thickness from the perimeter of the basin to the center thereof, thereby to provide for obtaining a substantially uniform light intensity on the outside of the basin." Claim 5 is typical of the reflector claims. It is as follows: "A reflector for semi-indirect lighting comprising a shallow cone-shaped body of translucent material, the thickness of the body increasing from the periphery to the vertex." Claim 6 is for the increasing translucency of the reflector, increasing from vertex to periphery.

All other considerations aside, the validity of claims 3, 5 and 6 cannot be sustained if it be shown that the translucent bowl or basin gradually increasing in thickness from periphery to apex is part of the prior art. If this element be new, the contention of the appellant as to the originality of the combination claims is greatly strengthened despite the fact that a patentable combination may be composed of old elements if used to obtain a new and original result.

The appellee contends that the appellant encounters tapering thickness of bowl or basin walls in lighting fixtures for the graded transmission of light in the prior art and that such were made by MacBeth-Evans Company for Ainsworth in an indirect lighting fixture known as the "Helmet Magna". It appears that approximately sixty thousand bowls of tapering thickness were sold as part of lighting fixtures by the appellant to the public. If Ainsworth sold such bowls to the public for a period in excess of two years prior to the filing of his application upon February 11, 1932, the bowl or basin of tapering thickness has become part of the prior art.

The appellant contends that the helmet shaped bowls or basins composing the reflecting units of the Helmet Magna were not made of tapering thickness by MacBeth-Evans Company until that company had developed a process for manufacturing the bowls or basins of pressed glass instead of blown glass and that the blown glass bowls of tapering thickness manufactured by MacBeth-Evans Company were for the appellant's use in experiments devoted to the development of the conical basin described in the patent in suit. The appellant alleges that therefore such bowls

do not anticipate the disclosure of the patent. He contends also that the trial court confused the testimony of the witnesses relating to bowls for the Helmet Magna made respectively of blown and pressed glass.

All the bowls made for the Helmet Magna were made by MacBeth-Evans Company for the appellant. They were made first of blown glass and later of pressed glass. It is clear that these bowls were sold as part of the light fixtures referred to to the public in large quantities for more than two years prior to February 11, 1932. The appellant contends, however, that the blown glass bowls were of uniform thickness and that the pressed glass bowls of tapering thickness were all manufactured and sold within the two year grace period specified by R.S. § 4886, 35 U.S.C.A. § 31.

The testimony of Dr. Henry Blau, employed by MacBeth-Evans Company, settles the issue. His testimony was as follows:

"Q. Now, Mr. Ainsworth has testified that he marketed, in 1924, I believe, a certain type of bowl known as the helmet shape. Does that mean anything to you, that shape so designated? A. Yes.

"Q. Did you have anything to do with manufacturing such bowls for Mr. Ainsworth? A. Yes, and for general distribution as well.

"Q. Yes, now, how were those bowls first made? A. By the conventional blowing process.

* * *

"Q. Now, when you were making these helmet type bowls for Mr. Ainsworth how were they being made so far as the relative thickness between the apex and the periphery is concerned? A. In answering that question I wish to state that this was a general procedure.

"Q. Yes. A. I did not always know that the bowls made were for Mr. Ainsworth or not, although I recognized some of his moulds. It was customary to mould bowls of that type with the apex thicker than the glass at the periphery.

"Q. That is to say that was your intention, you mean, in making of such bowls? A. Yes.

"Q. But my understanding is that whether or not that result was accomplished depended upon the skill and care of the blower, is that right? A. That is true. The degree or extent of difference in

thickness was determined by the desire or the intention of the blower. There is a tendency in all shapes of that type to have them become definitely thicker near the apex or center.

"Q. Why did the Macbeth Evans Company * * * make its helmet shape bowls not only for Mr. Ainsworth but for others thicker at the center than at the periphery? A. There were two primary reasons which occurred to me. The first one was to obtain uniformity of brightness or appearance. The other was to lower the center of gravity so that the bowls when hung from the three-point suspension would not hang at an odd angle. In other words, the edge of the basin was to be horizontal.

"Q. Now, at some later time, as I understand it, you made these helmet shape bowls for Mr. Ainsworth and probably for others of pressed glass, is that right? A. That is correct."

■. We think that the conclusion is inescapable that there was a public use of bowls or basins of tapering thickness for a much longer period than two years before Ainsworth's application and that this public use began with the blown glass bowls of tapering thickness and continued with the tapering pressed glass bowls. There is no evidence of abandonment by Ainsworth of the tapering bowl throughout the entire period. Public use is shown clearly. The function of the taper was to decrease translucency upon the outer surface of the bowl as the inner surface came closer to the source of light.

We conclude as did the learned District Judge that claims 3, 5 and 6 of the patent are invalid over the prior art.

■ The determination just expressed need not of itself invalidate the combination claims. As was stated by the Trial Judge the prior art does not contain the precise combination of a shallow conical bowl with a thickened apex, but it is a fact that bowls whether shallow or deep function on precisely the same principles of light refraction. It was old in the art to thicken glass to reduce brightness, whether a fixture was designed for direct or semi-indirect lighting. The shape of a bowl, not its tapering, determines the angle of reflection of the light. While the thickening of the bowl at the apex does permit the use of a high power lamp since the tapering keeps translucency uniform, we are unable to conclude that in a highly de-

veloped art such as indirect lighting it is invention to avoid an unpleasant bright spot by increasing the thickness of the glass, an expedient known to the prior art. The combination produced by Ainsworth shows a technical skill, but mere excellence of arrangement of old elements will not sustain invention.

The appellant's lighting fixture gained great commercial success, but commercial success may be weighed only in cases of doubt. DeForest Radio Co. v. General Electric Company, 283 U.S. 664, 685, 51 S.Ct. 563, 75 L.Ed. 1339; Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 498, 58 S.Ct. 291, 82 L.Ed. 382; Julius Levine & Co. v. Automatic Paper Machinery Co., 3 Cir., 63 F.2d 547, 550; John T. Riddell, Inc. v. Athletic Shoe Co., 7 Cir., 75 F.2d 93, 95. The appellant constructed a lighting fixture of most pleasing appearance and with modern lines. We agree with the District Court in its finding that a large portion of its commercial success was due to these factors. The Ainsworth fixture operated with nearly maximum efficiency. This in itself is not invention.

The combination claims must be held to be invalid.

### Unfair Competition.

It would appear that the appellee has imitated the appellant's fixture, as found by the trial judge. The Westinghouse Company, however, procured a license under Ainsworth's patent and exploited commercially the fixture described in the patent. Westinghouse gave it the name Magnalux and it was sold in substantial numbers to the public at large and to the building trades. Many of the appellant's witnesses, testifying on deposition, referred to the fixture as the Westinghouse Magnalux. The good will relating to the fixture is in the Westinghouse Company. It follows therefore that if there be unfair competition disclosed by the circumstances of the case at bar, the right to an injunction and to damages upon this ground does not rest in the appellant but in the Westinghouse Company. Perry v. American Hecolite Denture Corporation, 8 Cir., 78 F.2d 556, 559; Key West Cigar Manufacturers' Ass'n v. Rosenbloom, C.C., 171 F. 296; Billiken Co. v. Baker & Bennett Co., C.C., 174 F. 829; Nims on Unfair Competition and Trade-Marks, Third Edition, Sec. 16.

Therefore we see no error in the third conclusion of law expressed by the District Court, namely, that the appellant is not entitled to relief by reason of the appellee's imitation of the general appearance of his fixture.

Accordingly the decree dismissing the bill of complaint is affirmed.