**HOUSE OF WESTMORE, Inc., v. DENNEY.**

**No. 8707.**

Circuit Court of Appeals, Third Circuit.

Argued Feb. 6, 1945.

Decided Aug. 21, 1945.

Wm. Barclay Lex, of Philadelphia, Pa. (John Ross Kennard N. Ware, Norris, Lex, Hart & Eldredge and Howson & Howson, all of Philadelphia, Pa., on the brief), for appellant.

Samuel E. Darby, Jr., of New York City (Paul & Paul, of Philadelphia, Pa., and Walter A. Darby and Abraham I. Menin, both of New York City, on the brief), for appellee.

Before BIGGS, Circuit Judge, and FORMAN and LEAHY, District Judges.

FORMAN, District Judge.

Appellant, Frances Denney, is the manufacturer of a cosmetic preparation sold under the registered trade-mark "Over-Tone," issued January 21, 1941, as No. 384,464. The product consists of a solid dry cake packaged in a round flat compact, distinctive in color and design.

Appellee, House of Westmore, Inc., is the manufacturer of a cosmetic preparation sold under the registered trade-mark "Overglo," issued January 5, 1943, as No. 399,428. Its product is in liquid form and is packaged in a bottle distinctive also in color and design.

The parties will be referred to in this memorandum by the name of their product for the purpose of simplifying what appears to be a complicated history of the case.[1]

On May 4, 1943, Overglo filed its amended complaint seeking a declaratory judgment of invalidity, and of non-infringement, of the trade-mark Over-Tone; an injunction restraining Over-Tone from asserting that a use of the product Overglo constituted an infringement of the mark Over-Tone and restraining Over-Tone from threatening Overglo's customers with legal action for such use of the product Overglo; and for damages by reason of said unfair competitive practices.

Over-Tone answered the amended complaint by denying that it intimidated the customers of Overglo and that its trade-mark is invalid, but asserted that the trade-mark Overglo is invalid in that it is confusingly similar to the trade-mark Over-Tone; that it notified Overglo and its customers of its rights under its mark and that it intended to bring suit if there was a continued violation of its rights;

---

[1] In the lower court "Overglo" indicated the plaintiff and "Over-Tone" the defendant.

and that its mark is valid, distinctive and of great value to it. Along with its answer Over-Tone counterclaimed for an injunction restraining Overglo from the use of its product under that name, and for damages caused by Overglo's infringement of the mark Over-Tone and by its unfair competition.

Overglo filed a general denial in reply to Over-Tone's counterclaim, and alleged that the mark Over-Tone is invalid and not infringed by the mark Overglo.

At the trial it was brought out that the appearance of the two products and their containers are distinctly dissimilar; that both products are used for the identical purpose, i.e., as bases or foundations to which other cosmetics are to be subsequently applied; and that both products retail for the same price. It appeared that upon the disagreement of the parties concerning the questions of infringement and unfair competition, Over-Tone wrote letters to approximately all of the customers of Overglo stating that it believed that the name Overglo infringed its trade-mark and urged these customers to discontinue its sale. Evidence was admitted relating to the history of the manufacture and sale of the two products and the extent to which they were sold and advertised. Several paid investigators testified on behalf of Over-Tone to show the confusing similarity between the names of the two products.

The trial court found that the combination of words contained in the mark Over-Tone was descriptive of a quality or characteristic of the article sold, and concluded that the trade-mark was invalid. It also found that if Over-Tone was held to be a valid trade-mark, Overglo infringed.[2]

The court found, in addition, the following:

"I find that the defendant was not guilty of bad faith in sending out the notices of infringement, that it did so not for the purpose of destroying the plaintiff's business but for the purpose of protecting its trade-mark."

The judgment of the lower court follows:

"This cause having come on to be heard on final hearing upon the pleadings and proofs taken on behalf of both of the parties hereto, and counsel for the respective parties having been heard, and due consideration having been had, and the Court's findings and conclusions having heretofore been filed, now it is

Ordered, adjudged and decreed, as follows:

"1. That defendant's trade mark 'Over-Tone' is invalid.

"2. That the complaint herein, insofar as it prays for a declaratory judgment of non-infringement and an accounting for damages because of alleged unfair competition, be and the same hereby is dismissed.

---

[2] "I find as a fact that, if Over-Tone be held a valid trade-mark, Overglo infringes.

"Although I have found Over-Tone invalid as a trade-mark I think it well to deal with the matter of infringement in order that all issues may be before the Appellate Court, in the event an appeal should be taken.

"On first impression the two words strike one as being confusingly similar. The mere fact that both begin with the same word, 'over' is probably not sufficient to make them so, but when the plaintiff combined 'over' with another one-syllable word in which the dominant sound is also the long 'O' and which has an idea-association not too far removed from that of 'tone' I think that the line was overstepped. It is not visual comparison but memory comparison that counts. Coca-Cola Co. v. Carlisle Bottling Works, D.C., 43 F.2d 101. Of course, one who had been accustomed to buying and using 'Over-Tone' would probably not accept 'Overglo' by mistake, but if it had been merely recommended in a conversation with a friend or through advertising confusion might arise. It must be borne in mind that this is a product which sells for only $1.50 and that customers are not likely to give the same attention to the name of what they are buying as if the article were a piano.

"The defendant's testimony goes far to confirm this conclusion. The plaintiff criticizes it as coming from paid investigators, but that criticism goes only to its credibility. However, I accept it as true and, being so accepted, the fact that it comes from paid investigators has nothing to do with the inferences to be drawn from it. Of course, the investigators themselves were not deceived or confused. * * * The Clerks were not paid investigators and their spontaneous and practically unanimous reaction to the effect that the customer meant one thing when she said another is significant evidence of what the ordinary person in the trade thinks of the similarity of the two names." (Opinion of Judge Kirkpatrick filed April 8, 1944.)

"3. That defendant's counterclaim be and the same hereby is dismissed.

"4. No costs are awarded."

█ "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed." United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141. See also Certain-Teed Products Corp. v. Philadelphia & Sub. Mortg. G. Co., 3 Cir., 49 F.2d 114. Where a trade-mark is so connected with a product it is a symbol which indicates the origin of the particular product. It is at this time that the user of the mark has a right to prevent his product from being confused in the trade with another product. The diversion of established business by means of unfair business practices on the part of another is the basis of the user's complaint when this right is invaded. Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 92 F.2d 33, 35, certiorari denied, 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100. The cause of action known as unfair competition is the means whereby a person aggrieved obtains relief against such unfair competitive practices. This action exists today separate and apart from any statutory rights which the owner of a trade-mark possesses. The trade-mark law as it exists is but a part of the broad field of action of unfair competition which covers the former and other assaults upon the product of good will built up through business practice. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412–414, 36 S.Ct. 357, 60 L.Ed. 713. Unfair competition is based on equitable principles and may be distinguished from infringement of a trade-mark in that it does not involve the violation of the exclusive right to use a word, mark or symbol, but rather involves any violation of a right arising from the operation of an established business. G. W. Cole Co. v. American Cement & Oil Co., 7 Cir., 130 F. 703; Dennison Mfg. Co. v. Thomas Mfg. Co., C.C., 94 F. 651. Quite aside from the statutory rights granted under the Trade-Mark Acts, a proprietor of a trade-mark or trade name identified with his business and characterized by advertising and good will built by him, has a cause of action against one who by unfair means usurps the good will and distinctive attributes of the business so constructed by the other. See Hanover Star Milling Co. v. Metcalf, supra.

█ The Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq., was not intended to change the common law principles of trade-marks as embodied in the field of unfair competition. It gave rise to a right in those persons entitled to registration under it to invoke the jurisdiction of the federal courts in suits to protect the mark against infringement thereof and eliminated the necessity of showing a wrongful intent on the part of such persons by providing that registration of a trade-mark under the Act shall be prima facie evidence of ownership of that mark. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; 15 U.S.C.A. § 96. Registration, however, does not abridge the remedies available without registration, but rather enlarges those remedies. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 129 F.2d 848, 851. A suit under the Act can give rise only to recovery for the infringement of a *valid* trade-mark. The possessor of a mark invalid for purposes of registration is not barred from bringing an action for unfair competition. The introduction of an element susceptible of deceiving the market, which is so confusingly similar to the business practice that one has built up in association with a trade-mark, name or device, is an unfair practice which gives rise to the right of action. Although registration of a trade-mark by the Patent Office furnishes a presumption of ownership and validity of the mark, it does not conclusively establish either ownership of the mark or its validity. Both may be questioned in any suit in which validity is relied upon. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra; Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666. The ultimate burden of proving these elements rests therefore upon the one who seeks to sustain the mark in a statutory action for infringement or in a common law action for unfair competition based on confusing similarity of mark.

The first issue to consider in the instant case is whether the trade-mark Over-Tone, as applied to a solid dry cake of cosmetic preparation sold in a round flat container, is descriptive of a quality or characteristic of the article sold. An affirmative holding on this issue invalidates the trade-mark and bars recovery for its infringement in an action seeking relief therefrom brought under the trade-mark statutes or based on common law rights.

A review of other decisions concerning the descriptive qualities of words and names as trade-marks and trade names does not aid in determining whether Over-Tone is descriptive of a quality or characteristic of the product. The divergence of views of different courts is great. The extremes in either direction are supported by numerous decisions, each of which may be cited with equal impressiveness. A number of such cases were mentioned by the trial court. The conclusions of the courts appear to be based upon their individual points of view and impressions of the particular case at hand.

We find the judgment of the trial court that the word Over-Tone is descriptive to be logical, reasonable and an exercise of sound judgment based upon a careful consideration of all the factors involved. In view of the wide divergence of opinion of other courts, we can see no reason why this tribunal should substitute its judgment for that of the trial court where the judgment of the latter is not arbitrary, capricious or unreasonable and has a basis in fact and in law.

■ We affirm the holding of the trial court that the trade-mark Over-Tone is descriptive and invalid for the reasons set forth in its opinion. The issue of infringement on the part of Overglo is thereby resolved by reason of this finding, and that portion of Over-Tone's counterclaim dealing with alleged infringement on the part of Overglo was properly dismissed.

■ The finding of the trial court that in sending out notices of infringement Over-Tone was not guilty of bad faith and that it did so not for the purpose of destroying Overglo's business but for the purpose of protecting what it believed to be a valid trade-mark, is supported by the evidence and likewise should be sustained. The damages sought by Overglo covered these acts on the part of Over-Tone ex-

clusively and no others. Accordingly, that portion of the judgment of the trial court which dismissed the complaint insofar as it prayed for an accounting for damages because of alleged unfair competition is proper.

■ The trial court declined to grant a declaratory judgment that Overglo did not infringe Over-Tone, which relief was prayed for in Overglo's complaint. As support for this action on its part, the trial court found that, "if Over-Tone be held a valid trade-mark, Overglo infringes." This finding is also supported by the evidence and the denial of the declaratory judgment of non-infringement is affirmed.

■ The counterclaim sets forth two causes of action, although not separately stated—one based upon infringement of trade-mark and the other based upon unfair competition. The trial court dismissed the counterclaim. The finding of invalidity justified this action insofar as the counterclaim sought a remedy for infringement. However, the trial court failed to find acts sustaining the dismissal of the counterclaim insofar as it dealt with the charge of unfair competition. The determination alone that Over-Tone is invalid is not dispositive of the issue of unfair competition. The invasion of the common law rights of Over-Tone alleged in the counterclaim upon which it prayed for relief therein is in issue. At least some evidence pertaining thereto has been introduced, and a determination should have been made as to whether or not it is a fact that Overglo engaged in unfair competition against Over-Tone and the legal conclusions to be drawn therefrom.

The judgment of the trial court is affirmed except as it dismissed the counterclaim of Over-Tone. In this respect it is reversed and remanded for findings of fact and conclusions of law as to the charge of unfair competition alleged therein.