R. W. SIMS, Trustee, and R. W. Sims Trust

v.

MACK TRUCKS, INC.

Civ. A. Nos. 75–985, 76–2070.

United States District Court, E. D. Pennsylvania.

Feb. 8, 1978.

John A. Young, Fort Wayne, Ind., for plaintiff.

Pepper, Hamilton & Scheetz, Deborah F. Cohen, Jon A. Baughman, Philadelphia, Pa., Bernard & Brown, Martin J. Brown, Washington, D. C., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Count One of the amended complaint alleges infringement by the defendant of plaintiffs' patent for a front-discharge concrete mixing truck, and Count Two alleges unfair competition by defendant. Defendant has moved pursuant to F.R.Civ.P. 56(b) for summary judgment as to each count. Defendant contends as to the patent infringement count that the patent held by plaintiffs was invalid *ab initio* because of obviousness. Defendant seeks summary judgment on Count Two on the grounds that plaintiffs lack standing to sue and that no facts support plaintiffs' claims.

Because we are unable to resolve at this point at least one factual issue necessary to the determination of patent validity, defendant's motion for summary judgment as to Count One will be denied. As to Count Two, however, we hold that plaintiffs, as holders of the patent for mixers who are engaged only in the business of granting licenses to manufacture and sell mixers, cannot hold defendant liable for the tort of unfair competition in the manufacture and sale of these products. Defendant's motion for summary judgment therefore will be granted as to Count Two.

## I. THE PATENT INFRINGEMENT CLAIM:

Plaintiffs sue under 35 U.S.C. § 281, alleging the infringement of U.S. Patent No. 2,859,949, issued November 11, 1958, to J. Jack Willard for a Forward Discharging Transit Concrete Mixer ("the Willard patent"). For the purposes of this motion, defendant does not contest either that it infringed the Willard patent or that plaintiffs were the assignees of the Willard patent at the time of the infringement and consequently have the right to maintain this suit under the federal patent laws. The sole basis for defendant's motion for summary judgment is that the Willard patent was invalid from its inception under 35 U.S.C. § 103, and hence was improperly granted by the United States Patent Office.[1]

Section 103 provides in pertinent part: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. . . ."

Non-obviousness has long been recognized as a requirement of patentability, *Hotchkiss v. Greenwood*, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683 (1851), but it was not included in the federal statutory scheme until the enactment of § 103 in the Patent Act of 1952. The Supreme Court charted the course which trial courts must follow in § 103 cases in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). *Graham* observed that the issue of patent validity (*i. e.*, of obviousness *vel non*) ultimately is a question of law, *Great Atlantic & Pacific Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), but went on to enumerate three factual inquiries whose resolution must pre-

---

1. Defendant's brief also cites 35 U.S.C. § 102, which excludes from patentability inventions which lack novelty, as a defense to the patent infringement action. But the occasional references to § 102 do not amount to a coherent argument on its authority, and at oral argument defendant based its allegations of patent invalidity on § 103 only. We do not, consequently, consider at this time the applicability of the various subsections of § 102 to this case.

cede the consideration of that ultimate issue. First, what are the scope and content of the relevant prior art? Second, what are the differences between the prior art and the claims raised by the patent whose validity is challenged? Third, what is the level of ordinary skill in the pertinent art? The tripartite factual inquiry mandated by *Graham* remains the proper approach in a § 103 case. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976).

The first two issues of fact, regarding the prior art and the differences between it and the claims of the Willard patent, might well be resolvable at this time. The relevant prior art relied on by defendant includes two types of patents antedating the Willard patent. First, defendant points to U.S. Patent Reissue No. 23,320, reissued in 1951,[2] for a cement mixing drum. The patented invention was of a drum in which concrete could be mixed by rotating the drum in one direction and could be discharged by rotating the drum in the opposite direction. The second category of prior art relied on by defendant includes several patents of what the defendant describes as front-discharge mixers. We find that at least one of these, U.S. Patent No. 1,509,055, issued to Charles Payne in 1924, was indeed for a truck which had front-end discharge of concrete. We hasten to add that although we have all the prior art before us in the form of Patent Office documents, we are reluctant to construe it without the aid of expert testimony.[3]

Similarly, we might be able to assess on the basis of these documents the differences between the prior art and the claims of the Willard patent. It is the contention of defendant that the Willard patent merely combines the ingredients of the prior art, by placing a concrete mixing drum of the type described above on a front-discharge mixer essentially like that patented by Payne and others. We will assume, without deciding the matter, that defendant's characterization of combination is correct. We reiterate, however, our lack of confidence in arriving at such factual findings without hearing adequate expert testimony on the matter.

It is at the final factual stage, the level of ordinary skill in the pertinent art, that defendant's motion for summary judgment as to patent infringement fails. We note that this factual inquiry actually involves two issues: the definition of the pertinent art, and the ascertainment of the level of ordinary skill in that art. The record in this case is barren as to both of these sub-issues.

The Third Circuit's case law suggests that this deficiency in the record is fatal. In *Systematic Tool & Machine Co. v. Walter Kidde & Co., Inc.*, 555 F.2d 342 (3d Cir. 1977), the court reversed the district court's finding that a patent for a tomato-slicing device was non-obvious on the ground that the district court had erred by defining the persons possessed of ordinary skill in the pertinent art to be slicers of tomatoes (*i. e.*, consumers) rather than mechanics. That is, the "hypothetical person having ordinary skill in the art" was defined improperly. *Id.* at 348 (footnote omitted). Similarly, in *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530 (3d Cir. 1976), the district court's finding of obviousness was reversed. In that case Judge Adams held that the district court erred in defining the person in the pertinent art as a mechanical engineer rather than a designer of body-training devices. In the instant case, defendant's failure to introduce any competent evidence as to what the pertinent art is for § 103 purposes leaves us at a total loss in defining that art.

Even were we able to hypothesize the probable conclusion that the relevant

---

**2.** This patent was issued and reissued to Carl L. Willard and J. Jack Willard. The latter obtained the patent in suit.

**3.** Defendant has produced no affidavits of experts in support of its motion. Plaintiffs have submitted the affidavit of a single expert, Robert W. Fay, which is of limited utility in helping us to address the *Graham* issues.

artist is the designer of cement-mixing truck bodies and chassis, we would have to engage in the gross speculation as to what the level of ordinary skill in that field was at the time the design of the Willard patent was invented. *Universal Athletic Sales Co.* held that, on the basis of a record which the trial court admitted was "deficient" as to the level of ordinary skill in the pertinent art, the trial court should have determined that the *Graham* criteria for obviousness were not met. 546 F.2d at 543. No record could be more deficient on that point than this one, and we accordingly are unable to grant the motion for summary judgment under the *Graham* analysis.

One possibility exists which might enable us to hold the Willard patent invalid as obvious without making findings as to the level of skill in the pertinent art. If the court were convinced that the inventions contained in the Willard patent would have been obvious on the basis of prior art to a reasonable man without any special skills associated with truck designing, *a fortiori* the inventions would be obvious to the hypothetical person of ordinary skill in the pertinent art. To suggest that the relevant differences would be less likely to be obvious to such an artist than to the reasonable man would be illogical. We find, however, that insofar as we are able, unassisted by expert testimony, to comprehend the prior art and the differences between it and the Willard patent, these differences would not have been obvious to a reasonable man. Hence, this alternative theory for reaching § 103 obviousness, whatever its merits, is inapplicable to this case.

Defendant has attempted to characterize the Willard patent as a combination of two components known in the prior art, the mixing drum and front-discharge mixer, and argues that such combinations are not patentable under *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). But, as both the *A & P* decision and the cases decided under § 103 make clear, the characterization of a device as a "combination" is not dispositive. Recent Supreme Court decisions focus on the concept of synergy in determining whether a combination of elements known in the prior art is patentable. Accepting *arguendo* defendant's contention that the Willard patent is a mere combination, the relevant test would be whether that combination produces a result whose effect is greater than the sum of the effects of its component parts taken separately. *Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 282, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Anderson's-Black Rock v. Pavement Salvage Co.,* 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). We are totally unprepared, on the basis of the record as it now stands, to make such a determination.

We note that our denial of defendant's motion for summary judgment on § 103 grounds seems to be consistent with the usual manner of disposition of such cases. While summary judgment is appropriate in adjudications of patent validity as in any other case where there is no genuine issue as to any material fact, we can find only one patent infringement case in this circuit in which a defendant's § 103 claim of patent invalidity prevailed on a motion for summary judgment. *Allen-Bradley Co. v. Air Reduction Co.,* 273 F.Supp. 930 (W.D. Pa.1967), *aff'd per curiam,* 391 F.2d 282 (3d Cir. 1968). As both opinions point out, the *Allen-Bradley* case was extraordinary in at least two regards: the simplicity of the device in question (packaging for uniform small articles) and the prior art; and the extensiveness of briefing and oral argument on defendant's motion, including affidavits of experts on both sides, actual samples of the devices and courtroom demonstrations. Both the relative complexity of the Willard patent and of the relevant prior art and the far less developed record in our case make *Allen-Bradley* distinguishable. We clearly "need . . . expert testimony . . . to explain or evaluate the prior art [and] to explain the application of complicated patent descriptions to the subject matter of the patent" as well as for other inquiries, *Borden Co. v. Clearfield Cheese Co., Inc.,* 369 F.2d 96, 101 (3d Cir. 1966), *quoting Messing v. Quiltmaster Corp.,* 159 F.Supp. 181, 184 (D.N.J.1958).

Summary judgment is thus inappropriate on Count One.

## II. THE UNFAIR COMPETITION CLAIM:

Plaintiffs have never produced or marketed any mixers, but instead have derived income from the granting of licenses to manufacture them to several companies, one of which, Travel Batcher Corporation, was at the time of the grant controlled by the beneficiaries of the plaintiff trust.

It is plaintiffs' contention in Count Two that defendant's vice president visited Travel Batcher's production facilities in Utah in 1963 and negotiated the purchase of a license under plaintiffs' patent, obtaining in the course of these negotiations trade secrets which it used beginning in 1972 to produce its own mixers; that in 1975 defendant wrote letters to a federal government agency and in 1974 produced and distributed a film tending to disparage the products of plaintiffs' licensees; and that defendant illegally tied the sale of concrete mixer barrels to that of mixer chassis. It appears that substantially all of the alleged acts after 1963 occurred at defendant's corporate headquarters in Pennsylvania.

■ Both parties have referred to plaintiffs' ability to hold defendant liable for unfair competition as "standing." This label invites confusion with the doctrine of standing to sue in the federal courts, which is not at issue here, and we shall refrain from using it. Moreover, state tort law is the source of an action for unfair competition in the federal courts, *Pecheur Lozenge Co. v. National Candy Co.,* 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103 (1942), and we look there to see whether Sims can hold defendant liable.

Pursuant to Pennsylvania's choice of law rule calling for "interest analysis" in tort cases, this court must apply the law of the state bearing the most substantial contacts with the alleged wrong. *Mixing Equipment Co. v. Philadelphia Gear, Inc.,* 312 F.Supp. 1269, 1275 (E.D.Pa.1970). Because all of defendant's alleged tortious activity, except for that which occurred during its vice president's 1963 trip to Utah, apparently took place in Pennsylvania, and defendant is incorporated in and has its principal place of business in Pennsylvania, we look to Pennsylvania law to resolve the substantive issue of whether plaintiffs can recover.

■ Under Pennsylvania law, the tort of unfair competition contemplates activity resulting in the possible confusion or unfair comparison in the minds of ordinary purchasers between the products sold by two competing businesses. *See, e. g., John Wright, Inc. v. Casper Corp.,* 419 F.Supp. 292, 319 (E.D.Pa.1976); *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 635, 136 A.2d 838 (1957). The unfair competition alleged by plaintiffs occurred in the mixer market; plaintiffs never were in the business of producing or selling mixers, or of marketing any product similar enough to mixers that confusion might have been probable. *See Gamlen Chemical Co. v. Gamlen,* 79 F.Supp. 622, 634 (W.D.Pa.1948).[4] While plaintiffs may have had an indirect economic interest which was adversely affected by defendant's alleged tortious conduct, we hold on the basis of our interpretation of the Pennsylvania cases that such an indirect interest is insufficient as a matter of law to permit a party to prevail in an action for unfair competition.[5]

Moreover, the incapacity of a mere patent holder to sustain a suit against a manufacturer for unfair competition has long

---

**4.** We assume *arguendo* that potential competitors can maintain claims for unfair competition. Plaintiffs, however, have neither pleaded nor adduced facts demonstrating that they are or ever have been potential competitors of defendant.

**5.** Assuming *arguendo* that Utah law is deemed controlling with regard to some or all of the alleged tortious activity (although neither party has argued to that conclusion), it would appear that the same axioms of the law of unfair competition would render plaintiffs without capacity to bring the tort action. *See, e. g., Hi-Land Dairyman's Ass'n v. Cloverleaf Dairy,* 107 Utah 68, 151 P.2d 710 (1944).

been settled in this circuit. In *Edison v. Hawthorne*, 108 F. 839 (3d Cir. 1901), the court held that the inventor of the phonograph could not prevent defendants from advertising the sale of Edison Phonographs, since the "pecuniary interest" required of a plaintiff was not personal to the inventor but resided instead in the corporations which manufactured and sold them. The Third Circuit affirmed the trial court's finding that "if any person is injured by the defendants' sign, it is [the manufacturers], or one of them, and not [the inventor]". *Id.* at 840–41. The facts of *Ainsworth v. Gill Glass & Fixture Co.*, 106 F.2d 491 (3d Cir. 1939), are even more analogous to those of the case at bar. There plaintiff, a patent holder who had granted a license under the patent to a manufacturing company, alleged both patent infringement and unfair competition. The court observed that the plaintiff's evidence as to unfair competition referred to competition between defendant's goods and the licensee-manufacturing company's products. The right to recover in tort was held, accordingly, to rest with that company rather than with the patent holder.

■ Both these cases, one of them preceding the Supreme Court's decision in *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the other coming before *Erie's* doctrinal impact was felt, appear to have been decided under federal substantive law. Because we now must follow state substantive law when confronted with a similar situation, the authority of *Edison* and *Ainsworth* cannot be invoked directly. We do find the logic in these cases compelling, however; and we arrive at the same result as the Third Circuit therein, inasmuch as we find that only the licensees under the patent (including Travel Batcher) and not the holder of the

patent can on these facts hold defendant liable under Pennsylvania law for the tort of unfair competition.

We are not persuaded by plaintiffs' contention that this case is distinguishable from *Edison* and *Ainsworth* on the ground that plaintiffs merely granted non-exclusive licenses under their patent while the patent holders in those cases fully assigned their rights. In all three instances the patent holders were not themselves involved in manufacturing or selling. The terms under which they licensed others to do so are not material to the critical legal issue.

Plaintiffs also mounted a frontal attack on the extant authority when they contended at oral argument that there exists "no distinction whatsoever" between the rights to sue for patent infringement and for the tort of unfair competition, owing to plaintiffs' status as developer of the mixer and to an alleged identity of the factual issues relevant to the patent infringement and unfair competition claims. We reject this novel proposition. In fact, these rights are entirely different. The federal statute creating a cause of action for patent infringement[6] protects the property interests of a patent holder, while the common law of unfair competition stands vigil over the distinguishable rights of a business competitor to certain elements of fair play in the market in which he is involved.[7] Often, as here, these two sets of interests will repose in different legal entities.

Both parties have argued the common-law count in this case under the conceptual rubric of "unfair competition", and our conclusion that defendant's motion for summary judgment should be granted as to that count is based on an analysis of that body of law. We suspect that at least one factual component of plaintiffs' "unfair competi-

6. 35 U.S.C. § 281 (1952).

7. Unfair competition is similarly distinct for these purposes from trademark infringement. Hence, the cases cited by plaintiff, holding that licensors can sue for trademark infringement, are inapposite to our consideration of unfair competition. Moreover, all of the trademark cases cited by plaintiffs are distinguishable in

that plaintiff and defendant apparently were in each instance competitors. *Kidd v. Johnson*, 100 U.S. 617, 25 L.Ed. 769 (1880), *American Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446 (6th Cir. 1942); *Volkswagenwerk Aktiengesellschaft v. Dreer*, 224 F.Supp. 744 (E.D. Pa.1963); *Progressive Welder Co. v. Collom*, 125 F.Supp. 307 (D.Minn.1954).

tion" claim, defendant's alleged theft of trade secrets, might be a tort conceptually distinct from the tort of unfair competition and would merit separate consideration had the parties addressed it independently. Neither plaintiffs nor defendant has advanced any argument that the alleged theft of trade secrets has any ramifications with respect to the legal issue of plaintiffs' ability to hold defendant liable on Count Two which diverge from those of the unfair competition claims generally. Because the legal relevance of theft of trade secret allegations to this aspect of the case has been neither briefed nor argued, we will not engage in any such analysis.

Since we find that plaintiffs, being mere patent holders not engaged in the sale or manufacture of the product with regard to which unfair competition is alleged, cannot as a matter of law hold defendant liable for that tort, we do not otherwise reach the issue of whether there are facts to support that claim.

III. COSTS:

Defendant has sought under 35 U.S.C. § 285 attorneys' fees incurred in the patent infringement count, and plaintiffs have moved for costs pursuant to 28 U.S.C. § 1927, alleging defendant acted in bad faith in pursuing summary judgment as to Count One. We will deny both requests.