479 F.Supp. 792 (1979)
INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF WESTERN PENNSYLVANIA, INC., a non-profit religious organization, Individually, and on behalf of the Members thereof, and Dennis Gorrick, President of the Pittsburgh Temple of the International Society for Krishna Consciousness of Western Pennsylvania, Inc., Plaintiffs,
v.
STADIUM AUTHORITY OF the CITY OF PITTSBURGH, a body politic and corporate, Charles E. Portman, Executive Director of the Stadium Authority of the City of Pittsburgh, Three Rivers Management Corporation, a Pennsylvania Corporation, and Walter E. Golby, Executive Director of the Three Rivers Management Corporation, Defendants.
Civ. A. No. 79-807.
United States District Court, W. D. Pennsylvania.
November 7, 1979.
*793 *794 Michael Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, for plaintiffs.
H. Woodruff Turner, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Three Rivers Management and Walter Golby.
David J. Armstrong, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for Stadium Authority and Charles Portman.

OPINION
SNYDER, District Judge.
The International Society for Krishna Consciousness of Western Pennsylvania, Inc. (self styled ISKCON), brought action seeking injunctive and declaratory relief against, among others, the Three Rivers Management Corporation (Management) for interference with their First and Fourteenth Amendment rights. Management has counterclaimed for Federal trademark infringement and Federal and State unfair competition. Plaintiff has moved to dismiss the counterclaims and the motion will be granted.

I. Background

ISKCON, in its complaint, claims to be a religious society which imposes on its members the duty to perform "Sankirtan," the public broadcasting of the glories of God through religious rituals such as (a) the dissemination of the word of God through preaching and reading aloud from religious literature, (b) the distribution to the public of religious literature, and (c) the solicitation of contributions to ISKCON so that the members can spread the message of Krishna Consciousness.
In the Spring of 1979, members of ISKCON performed these religious practices at the Stadium and on the ramps, concourses, and walkways. Management threatened legal action if ISKCON continued its activities at the Stadium and allegedly prevented ISKCON from practicing their religion at the Stadium. ISKCON brought suit under 42 U.S.C. §§ 1983, 1988 and the First and Fourteenth Amendments for interfering with Plaintiffs' rights to free speech and assembly and the exercise of their religion.
Management claims in its counterclaim that in April 1979, members of ISKCON, while performing Sankirtan at the Stadium, were distributing buttons bearing an imitation of the Pirates team logo (the picture of a Pirate surrounded by the words "Pittsburgh Pirates")a trademark owned by the Pittsburgh Athletic Club, Inc. (the Pirates) which the Pirates had duly registered and used in interstate commerce since at least 1972. Management claims that ISKCON's button distribution activity constituted trademark infringement and Federal and State unfair competition.
The Pirates are not parties to this action or to the counterclaims asserted by Management, which is a wholly-owned subsidiary of the Pirates. Management has leased Three Rivers Stadium from the Stadium Authority of the City of Pittsburgh and is responsible for the overall operation of the Stadium. Management leases the Stadium from time to time for specific events open to the public and to private groups. Management maintains security at the Stadium and claims it has consistently enforced a policy forbidding all charitable solicitation there. It was at Management's direction that ISKCON was denied access to the Stadium.
Management brings its counterclaims pursuant to an assignment by the Pirates "to transfer to Assignee the above-described trademark infringement and unfair competition claims and to confer on it the right in full power in its absolute discretion to dispose of the above-described trademark *795 infringement claim. . . ." (A copy of the Assignment is attached hereto as Exhibit A.)
The Pirates have not licensed or assigned this trademark to ISKCON nor permitted ISKCON to distribute buttons bearing the trademark.

II. Discussion

A. The Trademark Infringement

We consider first the trademark infringement claim on which the parties concentrated their arguments. The Lanham Act, 15 U.S.C. § 1114, provides in part:
"(1) Any person who shall, without the consent of the registrant[infringe on a trademark] shall be liable in a civil action by the registrant for the remedies hereinafter provided."
ISKCON argues that Management is not a registrant, or a licensee or assignee of the trademark, and hence cannot assert the trademark infringement claim, citing Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154 (1st Cir. 1977).
Management points to the "Definitions" section of the Lanham Act, 15 U.S.C. § 1127, wherein "registrant" is defined as "embrac[ing] the legal representatives, predecessors, successors and assigns of such . . . registrant."
The property rights in trademark are unique, existing only by statute. As stated in Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457, 464 (3rd Cir.), cert. denied 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968),
"a trademark is not property in the ordinary sense but only a word or symbol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trademark beyond these. It cannot be assigned in gross and may only be transferred with a business to identify the merchandise of the owner."
In Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), an action was brought for patent infringement by the assignee of the patent owner's claims arising out of the alleged infringement of the patent by the defendant. The attempted assignment was held invalid and we find the reasoning instructive here.
The Supreme Court first explained the nature of the property right bestowed by the patent statute:
"The government is not granting the common-law right to make, use and vend, but it is granting the incident of exclusive ownership of that common-law right, which cannot be enjoyed save with the common-law right. A patent confers a monopoly. . . . The idea of monopoly held by one in making, using and vending connotes the right in him to do that thing from which he excludes others."
261 U.S. at 35-36, 43 S.Ct. at 257, 67 L.Ed. at 520. (Citations omitted).
The Court then quoted from Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891):
"`The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant, convey, either, 1st, the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. . . . Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement.'"
261 U.S. at 37, 43 S.Ct. at 257, 67 L.Ed. at 520.
And the Court, quoting from Gayler v. Wilder, 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1851), then stated:

*796 "`It was obviously not the intention of the Legislature to permit several monopolies to be made out of one, and divided among different persons within the same limits. Such a division would inevitably lead to fraudulent impositions upon persons who desired to purchase the use of the improvement, and would subject a party who, under a mistake as to his rights, used the invention without authority, to be harassed by a multiplicity of suits instead of one, and to successive recoveries of damages by different persons holding different portions of the patent right in the same place.'"
261 U.S. at 38, 43 S.Ct. at 257, 67 L.Ed. at 520-21. (Citations omitted).
The Court responded to Nye Tool's argument that the right to sue was an assignable chose in action, as follows:
"It is said that the claim of an owner of a patent for damages for infringement is only a chose in action which in modern days may be so assigned that the assignee acquires full title and the right to sue at law as well as in equity without joining his assignor. This view ignores the peculiar character of patent property and the recognized rules for the transfer of its ownership and its incidents. Patent property is the creature of statute law and its incidents are equally so and depend upon the construction to be given to the statutes creating it and them, in view of the policy of Congress in their enactment. This is shown by the opinion of this Court in Waterman v. Mackenzie, [supra], and in the line of authorities followed therein. It is not safe, therefore, in dealing with a transfer of rights under the patent law, to follow implicitly the rules governing a transfer of rights in a chose in action at common law. As Chief Justice Taney said in Gayler v. Wilder, [supra]:
`The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of the common law. It is created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes.'
The law as to who should bring a suit at law for damages by infringement of a patent is clearly and correctly stated in Robinson on Patents, vol. 3, § 937, as follows:
`With a single exception the plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided at the time of the infringement. An infringement is an invasion of the monopoly created by the patent, and the law which defines and authorizes this monopoly confers only upon its legal owners the right to institute proceedings for its violation. These owners are the patentee, his assignee, his grantee, or his personal representatives; and none but these are able to maintain an action for infringement in a court of law. . . .'
* * * * * *
The sole exception to the rule that only he who is the owner of the patent at the time of the infringement can sue for damages to which Professor Robinson refers is when such owner assigns the patent and also the claim for past infringements to the same person. In such a case, as the title and ownership of the claims are united, it is held that the owner may sue.
Under this exception, therefore, if the instrument here relied on had been effective to make the plaintiff an assignee or grantee of the patent or `of any interest therein' within the meaning of [the patent statute], then the plaintiff could have maintained this action for damages for infringements prior to the execution of the instrument; but, as we hold, the instrument did not have this effect."
261 U.S. at 40-44, 43 S.Ct. at 258, 259, 67 L.Ed. at 521-23. (Citations omitted).
Thus, ownership of the patent is a requisite to the right to sue for infringement. Agrashell, Inc. v. Hammons Products Co., 352 F.2d 443 (8th Cir. 1965); Switzer Brothers, Inc. v. Byrne, 242 F.2d 909 (6th Cir. *797 1957); Sims v. Mack Trucks, Inc., 407 F.Supp. 742 (E.D.Pa.1976).
The United States Court of Appeals for this Circuit distilled the principles underlying Crown Die & Tool Co. v. Nye Tool & Machine Works, supra: "[P]roperty in patents exists solely by virtue of federal statutory law," and "incidents of that property are defined and determined by patent statutes." Pierce v. Allen B. DuMont Laboratories, Inc., 297 F.2d 323 (3rd Cir. 1961), cert. denied 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962). In this respect, the statutory scheme and the case law on trademarks is identical to that of patents.
The statutory property right in trademark is not the right to make or use the mark, but to do so to the exclusion of others, i. e., a monopoly of sorts. Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., supra; Susser v. Carvel Corp., 206 F.Supp. 636 (S.D.N.Y.1962), aff'd 332 F.2d 505 (2nd Cir. 1964), cert. denied 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965). There are no rights in a trademark alone, and "no rights can be transferred apart from the business with which the mark is associated." Mister Donut of America v. Mr. Donut, Inc., 418 F.2d 838, 842 (9th Cir. 1969).
Assignment of trademark rights is carefully circumscribed by statute, complete with writing and recording requirements. 15 U.S.C. § 1060.[1] Furthermore, the statutory provision limits liability to an action by the registrant. 15 U.S.C. § 1114. With guidance from patent and copyright cases, the courts have given a restrictive interpretation to "registrant"it certainly does not include a non-exclusive licensor and may not even include an exclusive licensor. Quabaug Rubber Co. v. Fabiano Shoe Co., supra; Volkswagenwerk Aktiengesellschaft v. Dreer, 224 F.Supp. 744 (E.D.Pa.1963). But see Dunhill of London v. Kasser Distillers Products Corp., 350 F.Supp. 1341 (E.D. Pa.1972), aff'd per curiam 480 F.2d 917 (3d Cir. 1973).
Management attempts to support its position with Exakta Camera Co. v. Camera Specialty Co., 154 F.Supp. 158 (S.D.N.Y. 1957), which is inapposite. The court there found that if the plaintiff's predecessor had anything to assign, plaintiff would have had "title to the cause of action for past infringement which was expressly assigned in addition to the registrations themselves." 154 F.Supp. at 160 (emphasis supplied). This is consistent with the exception to the rule, as explained in Crown Die & Tool Co. v. Nye Tool & Machine Works, supra, that only the owner of the mark or patent at the time of the infringement can sue. We are convinced that Management as assignee of the chose in action for mark infringement cannot bring suit for the mark infringement.

B. Unfair Competition

A different question is presented when we consider the statutory and common law unfair competition claims. The law of trademarks is but a part of a broader law of unfair competition. Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004 (5th Cir.), cert. denied 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). "Unfair competition is almost universally regarded as a *798 question of whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers." Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg. Inc., supra at 1010. There is a federal cause of action for unfair competition, 15 U.S.C. §§ 1125, 1126(h), see Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg. Inc., supra; Wells Fargo & Co. v. Wells Fargo Express Co., 358 F.Supp. 1065 (D. Nevada 1973), and a Pennsylvania common law cause of action, see Sims v. Mack Trucks, Inc, 444 F.Supp. 1277 (E.D.Pa.1978), rev'd on other grounds, 608 F.2d 87 No. 78-2516 (3d Cir., October 16, 1979); Kirkland v. National Broadcasting Co., 425 F.Supp. 1111 (E.D.Pa.1976), aff'd 565 F.2d 152 (3d Cir. 1977). The elements are essentially the same, and there is no need for us to treat them differently here.
By definition, unfair competition involves conduct which is contrary to honest, industrial and commercial practice. Kirkland v. National Broadcasting Co., supra. As the court stated in House of West-more v. Denney, 151 F.2d 261, 265 (3d Cir. 1945):
"Quite aside from the statutory rights granted under the Trade-Mark Acts, a proprietor of a trademark or trade name identified with his business and characterized by advertising and good will built by him, has a cause of action against one who by unfair means usurps the good will and distinctive attributes of the business so constructed by the other." (Emphasis supplied)
Thus, even though a mark has not been registered or is incapable of becoming valid, the mark may be protected under the law of unfair competition. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Wells Fargo & Co. v. Wells Fargo Express Co., supra; King Pharr Canning Operations v. Pharr Canning Co., 85 F.Supp. 150 (W.D.Ark.1949).
We note, of course, that many of the same facts which support an action for trademark infringement also support an action for unfair competition. Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg. Inc., supra; Habitat Design Holdings Ltd. v. Habitat Inc., 436 F.Supp. 327 (S.D.N.Y.1977). As stated in American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2d Cir. 1960),
"The whole basis of the law of `unfair competition' . . . is that no one shall sell his goods in such a way as to make it appear that they come from some other source. The simplest form of this is to use the name or trademark of another . . .."
The basis of Management's unfair competition claims is the alleged use by the Plaintiffs of the Pirates' logoa registered trademark. Given the close relationship between a trademark infringement case and an unfair competition claim involving a registered trademark, such unfair competition claims should be governed by the same rule as that for the assignment of trademark infringement claims.[2] The *799 Plaintiff's Motion to Dismiss will therefore be granted.
An appropriate order will be entered.

EXHIBIT A

ASSIGNMENT
Assignment made this 28th day of June, 1979, by Pittsburgh Athletic Company Inc., a Delaware Corporation, of 600 Stadium Circle, City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania, herein referred to as Assignor, to Three Rivers Management Corporation, of 600 Stadium Circle, City of Pittsburgh, Commonwealth of Pennsylvania, herein referred to as Assignee.
Assignor hereby transfers, assigns and sets over to Assignee, free and clear of any claims, liens and encumbrances whatsoever, all of Assignor's right, title and interest, legal and equitable, in and to trademark infringement, unfair competition and related claims Assignor has against the International Society of Krishna Consciousness of Western Pennsylvania, Inc. ("ISKCON") and against ISKCON's members, agents or devotees arising out of ISKCON's sale or distribution on interstate commerce of souvenir items bearing the Assignor's marks and logo.
Assignee shall be substituted in the full place and stead of Assignor and be the real party in interest in litigation which is now pending in the United States District Court for the Western District of Pennsylvania, C.A. No. 79-807 under the caption International Society for Krishna Consciousness of Western Pennsylvania, Inc. et al. vs. Stadium Authority of the City of Pittsburgh et al.
Assignee is a wholly owned subsidiary of Assignor and the above assignment is made by Assignor for good and valuable consideration, receipt of which is hereby acknowledged.
The intent of this instrument is to transfer to Assignee the above-described trademark infringement and unfair competition claims and to confer on it the right in full power in its absolute discretion to dispose of the above-described trademark infringement and unfair competition claim at any time without notice to Assignor.
In witness whereof, the parties have executed this Assignment at Pittsburgh, Pennsylvania the day and year first above written.
 PITTSBURGH ATHLETIC
 COMPANY, INC.
 By /s/ J. M. O'Toole 
 Vice PresidentBusiness
 Administration
 Consented to this 28th day of June, 1979.
 THREE RIVERS MANAGEMENT
 CORPORATION
 By /s/ Walter E. Golby 
 Executive Vice President
NOTES
[1] 15 U.S.C. § 1060 provides:

"A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark and in any such assignment it shall not be necessary to include the goodwill of the business connected with the use of and symbolized by any other mark used in the business or by the name or style under which the business is conducted. Assignments shall be by instruments in writing duly executed. Acknowledgment shall be prima facie evidence of the execution of an assignment and when recorded in the Patent Office the record shall be prima facie evidence of execution. An assignment shall be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the Patent Office within three months after the date thereof or prior to such subsequent purchase. A separate record of assignments submitted for recording hereunder shall be maintained in the Patent Office."
[2] The issues of the controversy must be decided under Pennsylvania law, see Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103 (1942); Surgical Supply Service, Inc. v. Adler, 321 F.2d 536 (3d Cir. 1963), which is in accord with the federal law stemming from Swift v. Tyson, 1842, 16 Pet. 1, 10 L.Ed. 865 (declaring the law applicable to commercial transactions by the Federal Courts independent of local decisions), as overruled by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, in 1938, so that aid is found in the federal cases subsequent to Tompkins which apply the law of the state. Here, in Pennsylvania, the gist of the action of unfair competition is the deception practiced in "passing off" the goods of one for that of another. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916); House of Westmore v. Denney, 151 F.2d 261, 265 (3d Cir. 1945); B.V.D. Co. v. Kaufmann & Baer Co., 272 Pa. 240, 242, 116 A. 508. See the thorough discussion of Judge Edward R. Becker of the Eastern District of Pennsylvania in Dunhill of London v. Kasser Dist. Prod. Corp., 350 F.Supp. 1341, 1362, 1363, aff'd 480 F.2d 917 (3d Cir. 1973).

Pennsylvania does not, for example, permit the holder of a patent licensed to others to sue for unfair competition. Judge Joseph S. Lord stated the problem this way in Sims v. Mack Trucks, Inc., 444 F.Supp. 1277, 1281 (E.D.Pa. 1978):
"Under Pennsylvania law, the tort of unfair competition contemplates activity resulting in the possible confusion or unfair comparison in the minds of ordinary purchasers between the products sold by two competing businesses. See, e. g., John Wright, Inc. v. Casper Corp., 419 F.Supp. 292, 319 (E.D.Pa. 1976); Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 635, 136 A.2d 838 (1957). The unfair competition alleged by plaintiffs occurred in the mixer market; plaintiffs never were in the business of producing or selling mixers, or of marketing any product similar enough to mixers that confusion might have been probable. See Gamten Chemical Co. v. Gamlen, 79 F.Supp. 622, 634 (W.D.Pa.1948). While plaintiffs may have had an indirect economic interest which was adversely affected by defendant's alleged tortious conduct, we hold on the basis of our interpretation of the Pennsylvania cases that such an indirect interest is insufficient as a matter of law to permit a party to prevail in an action for unfair competition." (Footnote omitted)
(Reversed on other grounds, 608 F.2d 87, (3 Cir. 1979).
Unfair competition provides the legal basis for the business competitors rights to insist on fair play in the market in which they are involved. Volkswagenwerk Aktiengesellschaft v. Dreer, 224 F.Supp. 744 (E.D.Pa.1963); Progressive Welder Co. v. Collom, 125 F.Supp. 307 (D.Minn.1954). This is not the kind of claim that can be asserted by others. Sims v. Mack Trucks, Inc., supra; Alfred Dunhill of London Inc. v. Kasser Distillers Products, Corp., supra.